# Weger *versus* Pennsylvania Railroad Company.

1. A servant who is injured by the negligence or misconduct of a fellow-servant cannot maintain an action against the master, unless there be fault in employing unsafe machinery, or in the selection of the wrongdoer, or, perhaps, in continuing him there after he has proved incompetent.

2. A servant in the employ of a railroad company is not entitled to the same protection as a passenger. Per Pearson, P. J.

3. In case of a passenger injured, the presumptions are against the company and against the servant if he is hired by the company and in his regular employment at the time. *Id.*

4. The company is not liable to a servant for the negligence or want of skill in another person employed by them, nor for the difference of time kept by him and the conductor of the train. *Id.*

5. Hands working on a railroad were told by the foreman to go to their working place on a hand-car, that there was time enough before an expected train could overtake them; the foreman's watch was slower than the conductor's, the train struck the hand-car and killed one of the hands. *Held*, that the company was not liable for his death.

May 25th 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., absent.

[Weger *v.* Pennsylvania Railroad Co.]

Error to the Court of Common Pleas of *Dauphin county.*

This was an action on the case, brought to April Term 1859, by Mary Weger, widow of John Weger, against the Pennsylvania Railroad Company, for negligence in their servants, which caused the death of her husband.

Weger was a tender to stonemasons in the employ of the defendants, and John Wilber was the foreman. The men were working at Bailey's station, on the middle division of the road, and boarded at Newport, five miles distant. There was evidence that Wilber told the men to take the hand-car to go from Newport to Bailey's; that he said they had time to avoid a train which was shortly expected; that the men consented to go, and went; the morning was foggy; the train came on them, struck the hand-car, and Weger was killed. Wilber's watch was five or six minutes slower than the railroad time.

There was evidence by the superintendent of mason-work that he had given general directions that the hand-cars should not be used by the hands under him. Wilber has been in the employment of the company ever since. There was no further evidence as to gross negligence on the part of the foreman or as to his not being a man of ordinary skill and care.

The plaintiff's points, with their answers, were as follows:—

1. If the jury believe, under the evidence, that John Weger, plaintiff's husband, &c., in his lifetime, was on the hand-car at the time he received his fatal injury; that he was on the hand-car in obedience to the directions of his superior, and that the collision arose from the conductor of the passenger train and the captain of the hand-car not having the correct railroad time, then there would be negligence chargeable to the defendants, as the plaintiff's late husband was entitled to the same protection as a passenger on the passenger train who had paid his fare.

Answer: "The person in the employment of the company is not entitled to the same protection as a passenger. The presumptions are all against the company in the case of a passenger, and against the employee, if he is hired by the company, and is in the course of his regular employment and engagement at the time. The company is not liable to an employee for the negligence or want of skill in another person employed by it, nor for the difference in the time kept by him and the conductor of the train. There is no proof that the colliding train was running out of time, but there is evidence that the watch of Wilber was wrong when he got to Harrisburg, as stated by himself; but that will not render the company responsible, for the reasons given in the general charge."

2. Railroad companies make and regulate their time without regard to the local time, and it was the defendant's duty to cause not only their conductors of passenger trains, but also their other

[Weger *v.* Pennsylvania Railroad Co.]

agents, who had charge of a gang of laborers, travelling over the road, to be daily put in possession of the correct railroad time; and if the defendants have failed to prove, both that the conductor of the passenger train and the captain of the hand-car, in which deceased was riding, had the *true railroad time*, the jury would have a right to infer that the defendants did not, in this case, employ men of ordinary skill and care, and were, therefore, guilty of negligence, and, if the injury resulted from that cause, the defendants would be responsible in damages.

Answer: "All persons conducting trains on a railroad should have the true time; but if Wilber was not employed by the company to run cars, but undertook, by the consent of the laborers, to carry them on a hand-car to their place of boarding, the men as well as himself must run the risk of his time being correct, and if he was negligent or mistaken on that subject, it was the neglect or mistake of a person in the same employment with the deceased, and the company is not liable to one servant for the negligence of another. There is no proof that Wilber was not a man of skill in the business for which he was employed by the company—to superintend its laborers; and the jury has no right to infer, without proof, that he was employed for anything else, or had ever before shown want of care or skill."

3. Although, as a general rule, a master is not liable to a servant for damages occasioned by a fellow-servant, yet the master is responsible in all cases where he exposes his servant to unreasonable risk; therefore, if the jury believes, under the evidence, that the captain of the gang of laborers was not a man of ordinary skill and care, and yet was placed, by defendants, over John Weger and others, at the time of the accident, then, in law, the defendants did not take proper and reasonable care to protect the said John Weger from injury, and would be responsible in damages.

Answer: "The law would be as stated in this point, if the facts would support it. But we do not see any evidence in the case that Wilber was not a man of ordinary skill and care in the business for which he was employed by the company—superintending the laborers; nor is there any reason to believe that the company, or any of its officers or agents, knew that he was unskilful or careless, even in managing a hand-car; and knowledge of that is essential. The jury has no right to infer the want of skill and care, or knowledge thereof, without evidence."

Pearson, P. J., after stating the evidence, charged:—

["From all the evidence it is more than probable that the watch of Wilber was not correct, and that they had rather less time to run the distance than was expected.] There are some disputed facts in the case, but the foregoing are made out by the plaintiff's evidence.

[Weger v. Pennsylvania Railroad Co.]

" It is conceded that Weger was in the employment of the railroad company at the time of his death, and it is contended that it was caused by the mistake of Wilber, another employee of the company, in starting out with the hand-car when there was not sufficient time to run to the station, and that, as he was a superior employee, the company must be responsible for his blunder, or incautious act.  [It is now well settled in England, and in nearly every state of this Union, that a servant who is injured by the negligence or misconduct of his fellow-servant, can maintain no action against the master for such injury.]  See Redfield on Railways, p. 386, and a host of authorities there cited.  The same principle is fully recognised and adopted in our own state in Ryan v. The Cumberland Valley Railroad, 11 Harris 384.  It is impossible to distinguish that case, in principle, from the one under consideration.  There, as here, the injured man was not employed in running the cars, or in connection with the train, but in digging gravel to repair the road.  The connection between the alleged cause of the disaster and the party injured was more remote than here, for the allegation was, that the engineer or conductor in that case had failed to have the cars in proper order, and they were employed in a different occupation; whilst in this they were all engaged in the same business—repairing the road. The only bond between them, in either case, was that they were servants of one common employer.  Both are alike in this, that they were not pursuing their labor at the time, but were travelling from their place of boarding to their work.  It is urged upon us that they were servants of different grades, the one a mere laborer, the other his director or superintendent.  The same might be said as to the case of Ryan.  But it is settled in other states that the difference in grade of those in one common employment, has no effect on the rule of law, nor that they were employed in different branches of labor at the time: see 10 Cushing 228 to 232; 6 Id. 75.  [There is no proof that Wilber was either unskilful or negligent;] on the contrary, the only evidence in the case shows that he was reputed and known as both careful and vigilant.  If he had been known to the company not to possess the requisite qualifications, yet had been kept in its employ, a different rule might apply : see Farwell v. Boston, &c., Railroad Company, 4 Met. 49, 57, 60, 61; also, 3 Cush. 270. This case is, in every particular, the same in fact and principle, as that reported in 10 Cushing, already cited, which we consider sound law ; as is also that in 11 Harris 384, which is binding on this court.  We have neither the power or disposition to disregard the rule there established, or fritter it away by fine-spun distinctions.

" It is contended that the doctrine invoked applies only to those engaged in the common employment of running a train, as

[Weger *v.* Pennsylvania Railroad Co.]

engineer, conductor, brakesman, &c., and not to mere laborers, who can, in no wise, contribute to the disaster. The present case well illustrates the danger of such distinctions. Who can say that, if the two men working the hand-car had applied a very little more force, they would not have gotten safely through? It is conceded that one minute more would have carried them to a place of safety. [It may, therefore, have been quite as much their fault as what they, in common parlance, call '*the boss*.' It is said that Wilber should have been furnished with the correct time, and that his watch was wrong; but it must be borne in mind that he was not employed to run trains, but to superintend laborers.] They took the hand-car for mutual convenience in reaching their place of boarding, without any orders from the company, its superior officers or agents; and, as McCalla says, against his express orders. They all wished to save themselves the labor of walking to their meals. This is, however, a disputed question, and we have been considering the case as proved by the plaintiff alone, without calling your attention to the evidence of the defendant.

" One other position is assumed by the plaintiff: that the railroad company, by continuing Wilber in its employment since the accident, shows acquiescence in his acts, and knowledge of his carelessness or incapacity, and thereby renders itself responsible. The witness proves that he has been in the general employment of the company ever since, or a large portion of the time; in what capacity he does not state. But even had it been in running hand-cars, it could not help the plaintiff's case. Guilty knowledge, to avail, must be proved to have existed *before* the accident. If a man has a dog who bites another, the owner is not responsible until the propensity is known; barely keeping the animal afterwards will not be evidence of previous knowledge, which is essential to create liability; but for that occurring subsequently, the owner must respond. There is no proof of any previous want of care in Wilber, and we can see no evidence in the case which will render the company responsible for Weger's death, or on which you can properly render a verdict in favor of the plaintiffs."

The verdict was for the defendants.

The plaintiff removed the case to the Supreme Court, and assigned for error the portions of the charge in brackets and the answers to her points.

*R. A. Lamberton* and *Hamilton Alricks*, for plaintiff in error, cited Ryan *v.* Cumb. Val. Railroad, 11 Harris 384; Brown *v.* Marvell, 6 Hill 594; Quarman *v.* Burnett, 6 M. & W. 499; Murray *v.* S. C. Railroad Co., 1 McMullen 385; Randleson *v.* Murry, 3 N. & P. 399; 35 E. C. L. R. 342; Matthews *v.* West

London Waterworks Co., 3 Camp. 403; Bush *v.* Steinmetz, 1 Bos. & Pull. 404; Cumb. Valley Railroad *v.* Hughes, 1 Jones 145; The Phila. and Read. Railroad Co. *v.* Derby, 14 How. 468; Lockhart *v.* Lichtenthaler, 10 Wright 151; Railroad Co. *v.* Aspell, 11 Harris 147; Penna. Railroad *v.* Ogier, 11 Casey 60; Sullivan *v.* Phila. and Read. Railroad Co., 6 Id. 234; Powell *v.* Penna. Railroad Co., 8 Id. 416; The Little Miami Railroad Co. *v.* Stevens, 20 Ohio Rep. 415; Michael *v.* Allestree, 2 Lev. 172; Goodman *v.* Gay, 3 Harris 188; Beaty *v.* Gilmore, 4 Id. 463.

*J. C. Kunkel,* for defendants in error.

The opinion of the court was delivered, October 31st 1867, by
READ, J.—It seems to be now perfectly well settled in England, and mostly in this country, that a servant who is injured by the negligence or misconduct of a fellow-servant can maintain no action against the master for such injury. But it seems to be conceded that if there be any fault in the selection of the other servants, or in continuing them in their places, after they have proved incompetent, perhaps, or in the employing unsafe machinery, the master will be answerable for all injury to his servants in consequence. The law thus clearly stated by Judge Redfield in his Law of Railways, vol. 1, p. 521, is the rule in Pennsylvania and governs the present case. The deceased was killed (taking the evidence in its strongest light) by the negligence of his fellow-employee, and the only bond between them was, that there were servants of one common employer. The company, therefore, was not liable for the death of their employee. (See, also, Burges *v.* Wickham, in note to Readhead *v.* Midland Railway, 36 L. J. Q. B. 195.) Nor was there any proof that Wilber (the servant alleged to be in fault) was either unskilful or negligent. "On the contrary," says Judge Pearson, "the only evidence in the case shows that he was reputed and known as both careful and vigilant."

The charge of the learned judge was perfectly correct, and we see nothing in the seven assignments of error requiring any further remark.

Judgment affirmed.