## PETER TRAINOR v. PHILA. & R. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 28, 1890—Decided October 13, 1890.
[To be reported.]

(a) The plaintiff, a coal-handler, was injured while employed about an appliance for the storage of coal, dangerous and unfamiliar to him, and

Statement of Facts.

placed in the charge of a fellow-employee during the temporary absence of the regular foreman, the appliance being supplied by a contractor who was to "erect and operate it" at his own expense:

1. The question whether the temporary foreman was competent to manage the appliance having been fairly raised by the evidence, and the trial judge having correctly stated who were fellow-servants, error cannot be assigned to the omission of specific instructions as to the relation of the foreman to the plaintiff, where no request for them was made.

2. And after a trial on the merits, it is too late for the defendant then to object that the question whether it had placed a competent man in charge of the work was not raised by the pleadings. Where pleadings would have been amendable of course in the court below, the amendment will be considered as having been made: Jones v. Freyer, 3 W. N. 365; Bolton v. King, 105 Pa. 78.

3. The defendant, knowing the dangerous nature of the appliance and that its servants were employed about it, must have known that their safety required a competent person to supervise the work; and, in the absence of evidence that the plaintiff knew the dangerous character of the appliance, the question whether a competent man was placed in charge of it was for the jury.

4. A master owes to his servant the duty of providing a reasonably safe place in which to work, and reasonably safe appliances with which to do the work; and the delegation of this duty to an agent, or to an independent contractor, will not relieve the master from responsibility for an injury resulting from his neglect.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 156 July Term 1889, Sup. Ct.; court below, No. 577 December Term 1887, C. P. No. 2.

On January 30, 1888, Peter Trainor brought trespass against the Philadelphia & Reading Railroad Company and George DeB. Keim and others, receivers of said company, to recover damages for injuries received from the fall of a coal derrick upon him, averring in his statement of claim that said "derrick was so carelessly, negligently and improperly constructed as to be dangerous to employees," and that the "defendant carelessly, negligently and improperly placed said dangerously-constructed derrick in use where said Peter Trainor, the plaintiff, was working without notice or knowledge of said dangerous construction, and said derrick by reason of the premises fell," etc. Issue.

At the trial on February 14, 1889, it was shown that in the fall of 1887 the defendant had in operation at its coal yards at

Statement of Facts.

Port Richmond a new system of storing coal. The apparatus had not been long in use by the defendant, and consisted of a heavy pole fifty or sixty feet in length, set upright in a wooden cup on the ground and held in its place by guys. At the top of the pole was fastened an endless chain with scoops or pockets, by which the coal was drawn to the top of the pole and thence dropped down, the process being continued until the pile of coal was as high as it could be made, when the guys were taken down and attached to another pole in another place. To remove the coal for loading it upon cars or vessels, it was taken away from the bottom of the pile, and, as the removal reached the pole on the slope of the pile, the pole was to be drawn tight against the coal on the other side, by ropes attached to it above the coal. The poles and other appliances were furnished by one Berger, under a contract with the defendant company made in May, 1887, by which Berger agreed to "erect and operate" the plant or plants at his own expense.

In December, 1887, the work of removing the coal from one of the completed piles was in charge of one Toner, employed by the defendant company as foreman. Trainor and others, engaged in handling the coal, were selected by Toner from men approved of by the company's superintendent. On the afternoon of Monday, December 5th, a part of the coal having been removed, ropes were attached to the pole above the remaining coal, the other ends passing, one of them to a fence, and the other to a stake driven into the ground, and drawn as taut as it was practicable to draw them at that time. On the next morning there was about twenty or thirty feet of coal yet about the pole. Toner left the yards early in the day and, with the knowledge of the defendant company, put one McFadden, another employee, in charge of the men. McFadden occasionally acted as foreman, in the absence of Toner.

It was disputed in the testimony whether there was then more than one rope attached to the pole, or any at all; but it was shown that the drawing of the pole tight against the pile as the coal was being removed was neglected, and during the forenoon, while work was going on, the pole fell, killing two of the men and severely injuring others, among whom was the plaintiff. The plaintiff had been employed about the pile for but four or five days, and he testified that when working at the coal he supposed that the pole was sunk in the ground.

At the close of the testimony, the defendant presented the following points for instruction:

1. The evidence in this case shows that the pole which fell upon the plaintiff was owned by one A. J. Berger, an independent contractor, and that it was erected by him, and that all the care of the same was his only. There was therefore no duty upon the defendant towards the plaintiff with regard to the said pole, and the verdict should be for the defendant.[2]

3. An employer does not impliedly guarantee the absolute safety of his employees. A master discharges his full duty toward his servant, when he provides for him in such a manner as may fairly and reasonably be deemed prudent and safe. The evidence in this case shows that the pole was intended to be taken down. If, therefore, the person intrusted with this business acted in good faith in removing the guys some time before the accident, leaving the pole imbedded in the coal, believing, according to the best of his judgment, that there was no danger in so doing, and that shortly before the accident he had two or more blocks-and-falls attached to the pole to pull it over on the coal, and that it was so pulled the day before the accident as far as it would then go, there was no negligence on the defendant's part, and the plaintiff cannot recover.[3]

4. The evidence in this case does not show any negligence on the part of the defendant, producing the accident in question, and the plaintiff cannot recover.[4]

5. In accepting an employment, an employee is presumed to have notice of all patent risks incidental thereto, and he is further assumed to undertake such risks. The evidence in this case shows that the pole in question was intended to be taken down; that it had been standing without other support than the body of coal in which it was imbedded, for more than a month before the accident, and that blocks-and-falls were attached to the pole to draw it over, the day before the accident. All this was visible to the plaintiff, who continued to work around the pole. He must be considered as having taken the risk of the pole falling, and he cannot recover.[5]

6. The evidence shows that there was no defect in the pole itself or in its manner of erection or maintenance, but, on the contrary, that it was intended to take the pole down, and that the accident was proximately caused wholly by the manner in

Charge of Court below.

which the plaintiff and his co-employees acted in removing the coal around the pole. The verdict of the jury should, therefore, be for the defendant.[6]

7. The evidence shows that the pole was equipped with blocks-and-falls to pull it down as the coal was removed, and that the pole fell in consequence of the omission of William McFadden, who was a fellow-servant of the plaintiff, to have the blocks-and-falls manned and pulled upon as the coal was removed from the base of the pole. The verdict must, therefore, be for the defendant.[7]

8. Under all the evidence in this case, the verdict of the jury should be for the defendant.[8]

The court, FELL, J., refused the foregoing points and charged the jury as follows:

If the plaintiff is entitled to recover in this action it is for the reason that the injuries of which he complains were the result of the negligence of The Philadelphia & Reading Railroad Company, because of its failure to exercise ordinary care and prudence under the circumstances of the case. If there was negligence here, on the part of the company, it was because of its failure to perform some duty which it owed him. The first inquiry, then, is this: What duty did the railroad company owe to these workmen at this place?

It did not insure them against injury, and they assumed all the ordinary risks incident to the work in which they were engaged.

There are some duties which the employer owes to his workman which are fixed, and from which he cannot relieve himself, except by performing them. Among these are the duties to provide a reasonably safe place in which to work, and reasonably safe instruments with which to do his work. If this duty is delegated to another, the agent charged with its performance stands in the same position as the principal. But one who enters the service of another always takes upon himself the ordinary risks of the employment. The negligent act of a fellow-workman is one of these risks. An employer is then not responsible to a workman for an injury caused by the negligence of a fellow-workman.

Men are fellow-workmen when they are engaged in the same common work and are performing duties for the same general

Charge of Court below.

purpose. This rule is not changed by the fact that one is inferior in rank to another and is subject to his direction and control. The fact that a man has charge of a gang of men, working with them or overseeing them, does not take him out of the rule that he is a fellow-workman, or make his employer responsible for an injury to another workman caused by his neglect.

How did this accident happen? What occasioned it? You have been rendered by the testimony produced here, I think, thoroughly familiar with that subject. . . . .

The situation when the men went to work on Tuesday morning was this: The pole was imbedded in a pile of coal which was from twenty to thirty feet deep, with the ropes attached. Now, taking that situation, was there any danger in it to the men who were working there? Was this an unsafe place in which to place men to work? Was there any practical difficulty in removing this pole safely?

When the men went to work in the morning the pole was secure. It was so firmly imbedded in the coal the night before that it was impossible to move it; it was drawn on until there was danger of breaking. It seems to me that the only danger that could have been apprehended, the only danger that could have been reasonably considered at that time, was not that the place in itself was an unsafe place; it was not that there was any defect in the machinery, but that there should be neglect in not keeping the ropes tight and not drawing the pole over soon enough, or that it should be done in an unskilful manner.

The first of these happened. Mr. McFadden, who had been left in charge of the matter by Mr. Toner, two hours before this time, and who had been cautioned by Mr. Berger to look out for the pole, neglected to do so. There was an oversight or an error of judgment upon his part, as to the proper time to remove the pole. He says he thought that at the time of the accident the pole was secure. At the time it fell, there was, according to his testimony, twenty feet of coal in front of it, and the coal sloped up to a much greater height back of it. He thinks it fell because of the pressure of a slide of coal behind it.

Toner was in charge of the dump, charged with this duty,

Charge of Court below.

according to his testimony, first to see that the men did their work properly; second, to keep their time, and, third, to take this pole down when the time came to remove it. McFadden was under him, and had charge of and performed the same duties when Toner was away, and at other times was a common workman about the yard. At the time of the accident, the company had notice that Toner was away and that McFadden was in charge.

[Then, if the situation at this time was becoming dangerous for the men there employed; if this danger was not apparent or known to them; if the place was becoming a dangerous one in which to work, and the danger was one of which they had no knowledge, the company owed them the duty to notify them of the danger, or to guard against it by the use of reasonable precautions. If it did this, it did its whole duty in the matter. If there was in the situation, as it stood on Tuesday morning at the time of the accident, no danger to be reasonably apprehended, then there was no duty resting on the company, and there can be no recovery in this case. If there was such a danger, that is, a danger to be reasonably apprehended and guarded against, then there rested upon the company the duty to guard against it. If a competent man, charged with the duty to see that the pole was taken down, was placed in charge of it, with the help and appliances sufficient and necessary for that purpose, and if he was a fellow-workman of the other men engaged there, and neglected his duty or erred in judgment, the company did all that it was bound to do, and is not responsible. If it failed in this respect, it failed in the performance of its duty, and is liable.] [1]

If then, gentlemen, there was no neglect in this case, of course there can be no recovery, and your verdict will be for the defendant; but, if there was negligence, the remaining question is that of the measure of damages. . . . . .

The jury returned a verdict for the plaintiff for $4,500. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal, assigning for error:

1. The portion of the charge embraced in [ ] [1]
2-8. The refusal of the defendant's points.[2 to 8]

Arguments.

*Mr. Gavin W. Hart* (with him *Mr. Geo. R. Kaercher* and *Mr. Thomas Hart, Jr.,*), for the appellant:

1. The part of the charge assigned for error was erroneous: (*a*) In submitting to the jury the question whether McFadden was an incompetent foreman; as the plaintiff had not so declared in his statement, and had given no evidence to that effect. (*b*) There was no pretence that the helps and appliances put up on Monday were not sufficient and proper ones. The accident did not arise from any insufficiency; it happened simply because they were not used. It is error to submit a question as to which there is no evidence: Evans v. Mengel, 1 Pa. 68; Elkins v. McKean, 79 Pa. 493. (*c*) The question whether McFadden was a fellow-workman with plaintiff was one of law for the court, and as there was no dispute about the facts it should not have been submitted: Lehigh V. Coal Co. v. Jones, 86 Pa. 432; Ryan v. Railroad Co., 23 Pa. 384; Caldwell v. Brown, 53 Pa. 453; Weger v. Railroad Co., 55 Pa. 460; Baird v. Pettit, 70 Pa. 477; D. & H. Canal Co. v. Carroll, 89 Pa. 374; National Tube-Works Co. v. Bedell, 96 Pa. 175; Bridge Co. v. Newberry, 96 Pa. 246. (*d*) There was no evidence that the company's superintendent was notified that there was danger; and when danger arises in the course of an employment, of which the employer has no knowledge, notice must be given: Patterson v. Railroad Co., 76 Pa. 389.

2. The evidence was uncontradicted that the pole was Berger's, and that the duty of its erection and removal was his. The defendant had nothing to do with the pole itself, and the first point of defendant should have been affirmed. It is submitted that defendant's third point set out all its obligations toward the plaintiff: Payne v. Reese, 100 Pa. 301; Grimont v. Hartman, 17 W. N. 252; Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 276; Baker v. Railroad Co., 95 Pa. 211; Allison Mfg. Co. v. McCormick, 118 Pa. 518. And if this be so, the fourth point should have been affirmed. Again; the risk of the pole falling was a patent one, for there was nothing visible to support it but the coal, and that the plaintiff was assisting to remove. Where everything he saw and knew was suggestive of risk, he could not assume as a fact that the pole was sunk in the ground, and that there was therefore no danger: Ship-Building Works v. Nuttall, 119 Pa. 149; Stoll v. Hoopes, 22

W. N. 159; Sykes v. Packer, 99 Pa. 465; Reading Iron Works v. Devine, 109 Pa. 246.

3. The facts set out in the defendant's sixth and seventh points were not contradicted. As before stated, it was for the court to say whether McFadden was a fellow-servant with the plaintiff; that he was, see: Dealey v. Railroad Co., 21 W. N. 45; Lehigh V. R. Co. v. Jones, 86 Pa. 432; Nat. Tube-Works Co. v. Bedell, 96 Pa. 175; Bridge Co. v. Newberry, 96 Pa. 246; Campbell v. Railroad Co., 17 W. N. 73; N. Y. etc. R. Co. v. Bell, 112 Pa. 400; Faber v. Manuf. Co., 126 Pa. 387. And it cannot be pretended that either Toner or McFadden were vice-principals. There is no case in which it is held that the mere fact that a boss or foreman has the power to employ or discharge hands, makes him a vice-principal, for whose acts the master is responsible. A foreman with but a special authority is a fellow-servant: Gerwig v. Folwell, 13 W. N. 267; Faber v. Manuf. Co., 126 Pa. 387. Neither Toner nor McFadden were charged with any duty of the master towards the men. They had nothing to do but to supervise the mode of doing a thing. Moreover, on the whole case, there was no dispute about the facts, and a verdict for the defendant should have been directed.

*Mr. Richard P. White* (with him *Mr. George H. Earle, Jr.,*), for the appellee:

"There are some duties which the master owes to the servant, and from which he cannot relieve himself except by performance. Thus, the master owes to every employee the duty of providing a reasonably safe place in which to work, and reasonably safe instruments, tools, and machinery with which to work. This is a direct, personal and absolute obligation; and, whilst the master may delegate these duties to an agent, such agent stands in the place of his principal, and the latter is responsible for the acts of such agent:" PAXSON, C. J., in Lewis v. Seifert, 116 Pa. 647. And see GRAY, C. J., in Holden v. Railroad Co., 129 Mass. 276.

1. The point is now made for the first time that the plaintiff's statement was not as broad as the proofs; and that therefore a trial on the merits, on evidence admitted without objection, is to be set aside. But both the courts and the legislature

Opinion of the Court.

have long since determined that mere incompleteness of statement shall not defeat justice, but instead shall always be amendable: Patton v. Railway Co., 96 Pa. 174; Bolton v. King, 105 Pa. 78; Quick v. Miller, 103 Pa. 67. In Jones v. Freyer, 3 W. N. 365, where there was no declaration at all, the Supreme Court refused to reverse after a trial on the merits. And it is said it was error to submit the question whether McFadden was a fellow-workman to the jury. But the court had accurately and exhaustively instructed as to who was, or who was not a fellow-servant. Having given the jury the correct rule, if the defendant required more it was its duty to ask express instructions: Fox v. Fox, 96 Pa. 60.

2. A master is bound, when employing a servant, to provide for the servant a safe working place and machinery. It may be that the persons by whom buildings and machinery are constructed are servants of the common master, but this does not relieve him of his obligation to supply buildings and machinery adequate for working use. . . . . Nor are those agents who are charged with the business of supplying the necessary machinery to be regarded as fellow-servants, but rather as charged with the duty which the master owes to the servant, and the neglect of such agents is to be regarded as the neglect of the master: Ford v. Fitchburg R. Co., 110 Mass. 240; Penna. etc. R. Co. v. Mason, 109 Pa. 301; Hough v. Railway Co., 100 U. S. 214; Lewis v. Seifert, 116 Pa. 628. The servant takes upon himself the natural and ordinary risks incident to the performance of his services: Farwell v. Railroad Co., 4 Metc. 49; O'Donnell v. Railroad Co., 59 Pa. 248; Wharton on Negl., 2d ed., §§ 206, 208, 209, 214, 237; and the diligence to be exercised by the master is to be in proportion to the hazard of the service: Chapman v. Railroad Co., 55 N. Y. 579; Penna. R. Co. v. Books, 57 Pa. 339; Huntingdon R. Co. v. Decker, 82 Pa. 124; Weger v. Railroad Co., 55 Pa. 463.

OPINION, MR. JUSTICE McCOLLUM:

In considering the portion of the charge which constitutes the first specifications of error, regard must be had to what precedes it. The learned judge had correctly stated who were fellow-servants, and if the company desired specific instructions on the point of the relation of McFadden to the appellee,

under their employment, it should have requested them. In the absence of a request for them, their omission cannot be regarded as reversible error.

The question whether McFadden was competent to superintend the work of taking down the pole was fairly raised by his own and Toner's evidence, as witnesses for the company. He was without experience or instruction in that work, and he was never directed to take charge of it. His duties were defined by his orders, and these were to look after the wheeling and handling of the coal; and, in his own language, "that was all he was concerned with." The conduct of Toner, the morning of the accident, was confirmatory of this view of the scope of McFadden's employment. He informed the company of his intended temporary absence from the work, and no objection was made to it, and he requested and was promised that a man should be sent to take his place. These facts he communicated to McFadden, who had not the slightest intimation that he was expected to assume any duty of Toner in the taking down and care of the pole. The company knew how the pole was supported, and that its employees were engaged in removing the coal from it, and must, therefore, have known that their safety required the presence of a competent person to supervise the work of taking it down. It knew McFadden's habits, capacity, and duties, and the duties of Toner. Its promise to send a man to take the place of the latter was evidence of its own understanding of its duty in the premises.

It is too late for the company to object, after a trial on the merits, that the question whether it had placed a competent man in charge of this work was not raised by the pleadings. These would have been amended on motion in the court below, even after verdict, to make the record conform to what was tried there, and we consider an amendment as made which is of course : Jones v. Freyer, 3 W. N. 365; Bolton v. King, 105 Pa. 78. It is not claimed that the learned judge erred in his statement to the jury of the duties of the company to its employees, but it is contended that he should have charged that these had all been performed in this case. But, as already indicated, we think the question whether a competent man was placed in charge of the pole was for the jury. It is a sufficient answer to the other criticisms of that part of the charge

contained in the first specification that the mere omission of an instruction not asked for is not cause for reversing a judgment.

The remaining specifications may be considered together. They are based on the denial of the written points submitted by the company, and each of these concluded with a request for a peremptory instruction to find for the defendant.

An employee assumes risks which are patent, and latent risks of which he is informed. In the case before us, the pole was not held in place by guys, and it was not set in the ground. Its only support was the coal pile around it. As the support was weakened by the removal of the coal, it was liable at any moment to fall upon and crush the men working at its base. The company knew this, but did not advise its coal-handlers of the danger to which they were exposed. It was a danger which was not patent to one in ignorance of the facts and whose experience and observation had taught him that such poles were either held in place by guys, or securely set in the ground. The same appliances which kept the pole in position while the coal-pile was being formed about it, would have held it securely there while the coal was being removed from it. These consisted of guys, which were taken away when the pile was formed and the work of removing it began. It seems from the testimony of Berger that the guys were taken away when the pile was complete, upon the theory that they were no longer of use there, and might be in the way of other guys supporting other poles in close proximity. As a substitute for the security afforded by these, a plan was adopted for taking down the pole while the work of removing the coal was in progress. Two poles were taken down safely in pursuance of this plan; but the third pole, to which the apparatus was attached for the purpose of taking it down, fell among the workmen, killing two of them instantly, and seriously injuring others. It is obvious, from the description of the plan, that its successful execution required the vigilant superintendence of a competent person, and even thus, speaking for myself, it was dangerous. A slight inconvenience or expense may have been saved by it, but these can have no weight in a matter affecting the safety of the workmen.

The master owes to the servant the duty of providing a rea-

sonably safe place to work in, and reasonably safe appliances with which to do the work; and the delegation of this duty to an agent or independent contractor will not relieve the master from responsibility for an injury to the servant resulting from its neglect. And, if there is any default in the selection of the other servants, or, in continuing them in their places after they have proved incompetent, the master is answerable for an injury to another servant, which is the consequence of such default: Lewis v. Seifert, 116 Pa. 628; Weger v. Railroad Co., 55 Pa. 460.

An examination of this record having failed to satisfy us that there is any substantial error in it, the specifications are overruled, and

The judgment is affirmed.