## PULLMAN'S PALACE-CAR CO. v. HARKINS.

(Circuit Court of Appeals, Third Circuit. May 25, 1893.)

No. 5.

1. JURY—CHALLENGES TO ARRAY.
   In a federal court it constitutes no ground of challenge to the array of jurors that three of the persons named in the venire had died after their names were placed in the wheel, and before the time of the drawing.

2. EXPERT EVIDENCE—DANGEROUS MACHINERY.
   In an action to recover damages for a death caused by being caught in a small, rapidly revolving shaft while deceased was working near it, there being no evidence that he saw it, there was no error in admitting evidence of experts that revolving shafting is dangerous machinery, the danger being latent.

3. WITNESS—EXAMINATION.
   In an action for damages for a death caused by unguarded machinery, where a witness for plaintiff is asked, on cross-examination, if it occurred

to him at the time that there was danger about the work, to which he answers in the affirmative, there is no error in permitting him, on redirect examination, to be asked wherein the danger consisted.

**4.** MASTER AND SERVANT—DANGEROUS MACHINERY—FELLOW SERVANTS.

Where a workman is killed by being caught in an unprotected revolving shaft, of whose dangers he is ignorant, the liability of the employer is not dependent upon whether he moved against it involuntarily, or was pushed against it by the shoving forward of a timber, which he and other workmen were lifting into place.

**5.** SAME—INSTRUCTIONS.

In such case it is within the sound discretion of a federal court to say in its charge to the jury that it is beyond reasonable doubt that, if the shaft had been boxed over, guarded with boards, or stopped while deceased was working there, the accident would not have happened.

**6.** SAME—DUTY OF MASTER.

In such case it is not error to charge that "a servant knowing the fact of machinery being in motion close by the place where he is working may be entirely ignorant of the risk he would incur by falling against or coming in contact with it. In such case it is the duty of the master not only to exercise due care, but good faith, towards the servant, and to inform him of the risks he undertakes."

**7.** SAME.

Where the proximate cause of a servant's death was unprotected machinery, of whose dangers he was ignorant, it was not error to refuse a charge that, if death resulted from the negligence of a certain fellow servant, with whom he was working, there could be no recovery, and to charge instead that it was the special and untransferable duty of the master to take reasonable precautions in protecting its servants from dangerous machinery.

**8.** TRIAL—INSTRUCTIONS—FEDERAL COURTS.

It is a settled rule in the federal courts that it is not error for the judge to express his opinion on the facts when the matters of fact are ultimately submitted to the jury, and the rules of law are properly stated.

In Error to the Circuit Court of the United States for the District of Delaware.

At Law. Action to recover damages for personal injuries resulting in death. There was a verdict for plaintiff for $7,000, and a motion for a new trial was denied. 52 Fed. Rep. 724. Defendant brings error. Affirmed.

Allan McCulloh and Geo. H. Bates, for plaintiff in error.

Levi C. Bird, (A. E. Sanborn, on the brief,) for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER, District Judge.

ACHESON, Circuit Judge. This was a suit by Mrs. Maggie Harkins against Pullman's Palace-Car Company for the recovery of damages for the death, alleged to have been occasioned by the defendant's negligence, of her husband, Michael Harkins, who, while in the employ of the defendant at its works in the city of Wilmington, Del., on the morning of January 8, 1891, was caught by a rapidly revolving shaft, and killed. The action was brought under a statute of Delaware in a state court, but was removed by the defendant into the United States circuit court. Harkins, who was about thirty years of age, and by occupation was a common laborer, inexperienced in the use and operation of machinery, went into the employ of the defendant seven or eight days before

his death. He was first set to polishing with pumice stone the exterior of cars, and continued at that work until the morning of January 8th, when he was taken to make one of a crew of seven men, who were engaged, under the directions of William Roach, a carpenter and a foreman in the defendant's employ, in raising heavy joists twenty feet long, which were to be used in the construction of a new second-story floor, and placing them in position on the top of a plate about eighteen feet above the ground floor of the building in which they were working. This plate rested against the inside wall of the building. At the distance of about four feet from the bottom of the plate, and about two feet from the side of the building, was a girder running parallel with the plate, with a bar of railroad iron fastened lengthwise on the top of it. About three feet from the top of the girder and between it and the bottom of the plate, was a revolving iron shaft one and one-half inches in diameter. This shaft was parallel with the plate and girder, and distant from the bottom of the plate about ten inches. It was used to communicate power to five sewing machines in an upper room. The end of the shaft projected from the pulley which operated it about three or four feet. A ladder had been placed against the girder at a distance of about five feet from the end of the shaft, and to the right of it. The company's head carpenter had put the men under the charge of Roach, and Harkins and the others were assigned their places by Roach, and acted under his orders. The accident about to be mentioned happened while the first joist was being put in place on the side of the building where the shafting was. A rope was tied around each end of the joist, and, the other end having been pulled up, Roach ascended the ladder followed by Harkins, and they took their stand on the bar of railroad iron, and, with their backs resting against the side of the building, they pulled up by means of the rope their end of the joist. They then turned around their faces to the plate and proceeded to lift the end of the joist to the top of the plate with their hands and shoulders. In doing this they stood on the bar of railroad iron on the top of the girder, between the ladder and the revolving shaft, the two men close together, one on either side of the joist, Harkins being next the shaft, and in close proximity to the end of it. The shaft was revolving at the rate of 170 revolutions a minute. After placing the end of the joist on the top of the plate it was found necessary to shift it around a piece of studding, and move it several inches more to the left, towards the shaft; and in making this change Harkins' clothing was caught by the shaft, and he was thrown against the bottom of the plate, between which and the shaft his body became wedged. He received injuries which resulted in his death in a few moments.

There was no covering or guard of any kind placed at the end of the shaft. It did not appear that any caution was given to Harkins in respect to the shafting. Roach testified that he gave him no warning, and heard none given to him. Roach further

testified: "I do not believe the man saw the shafting at the time he was caught. He might have seen it before. But at the time I do not think the man did, because his attention was drawn to something else,—drawn to putting this around the studding." There was no evidence tending to show that Harkins' attention had ever been called to the shafting; nor did it appear that during the short time he had been in the defendant's employ he had worked near to the shafting, or had any occasion to notice it. It was 16 or 17 feet above the floor, off to the side of the building, and was not used in connection with the work done in that shop. At the time of the accident tinsmiths were working nearly under the shaft, and there was hammering on trucks, and other noises occurring in the shop. The facts, as above narrated, appeared by the uncontradicted evidence. The assignments of error are 31 in number. We will specially notice such of them as were here urged.

The first assignment is to the refusal of the court to sustain the challenge to the array of jurors made by the defendant on the ground that before the venire issued three of the persons named therein had died. It did not, however, appear that in the filling of the wheel or in drawing the names of jurors therefrom there was any want of compliance with the provisions of the act of congress. The rule of court has not been furnished us. Presumably its terms were fulfilled. The act of congress does not fix the number of the panel of jurors to be summoned for the trial of civil causes. The mere fact, then, that three of the persons whose names had been placed in the wheel afterwards die before their names were drawn therefrom was not good ground of challenge to the array. Foust v. Com., 33 Pa. St. 338. Perhaps, for cause shown, the court might have issued a special venire, returnable forthwith, to fill up the panel; but this was not asked.

Assignments third and fourth and from the sixth to the eleventh, inclusive, raise the question whether the testimony of expert witnesses that revolving shafting is dangerous machinery was admissible. Upon a careful consideration of this record we are entirely satisfied that the testimony was properly received. Revolving shafting, it appears, is attended with peculiar and latent danger. It seizes with fatal result the clothing of any person who unconsciously or incautiously comes in contact with it. Usually it is noiseless. To an inexperienced person the motion of a rapidly revolving shaft one and one-half inches in diameter would not be observable unless he should happen to notice the pulley connected with it. One of the witnesses, an experienced machinist, speaks of revolving shafting as "a very harmless looking thing to an ignorant man." These facts are not of common observation and knowledge. We think, then, that upon the question of the peculiarly dangerous character of this particular species of machinery, the case belongs to that class in which persons having special knowledge, experience, and judgment may give their opinions. Ogden v. Parsons, 23 How. 167; Transportation Line v. Hope, 95 U. S.

297; Spring Co. v. Edgar, 99 U. S. 645; Insurance Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. Rep. 534; Lewis v. Seifert, 116 Pa. St. 628, 11 Atl. Rep. 514; Huizega v. Lumber Co., 51 Mich. 272, 16 N. W. Rep. 643; Railway Co. v. Frawley, 110 Ind. 18, 9 N. E. Rep. 594.

The assignments last enumerated embrace questions which elicited from the witnesses their opinion upon some other points, but the record does not show that any objection was made to those questions or exception taken to the answers. The general objection noted does not cover those matters, and therefore we are not at liberty to consider them.

The fifth assignment is as follows:

"That in the redirect examination of Joseph Farrell, a witness called on behalf of the plaintiff, the court erred in admitting the following evidence: 'Question. You were asked about this being a place of danger. In reply to that I will ask you if, in your opinion, it was a place of danger. (Objected to by counsel for the defendant. Objection overruled. Exception noted for defendant.) Q. State to the jury what constituted the danger of that place. Answer. It was an open pulley; nothing to cover it; very close to the side of the building; and the man could not help being caught the way he was working there.' "

Now, it will be perceived that the first of these questions was not answered at all, and, if the objection can be regarded as embracing the second, we think that question was properly allowed, because, on the cross-examination of this witness, he had been asked, "Did it occur to you at the time that there was danger about that job that he was engaged in?" to which the witness answered, "There was danger." The defendant having thus opened up the subject, it was not error to permit the plaintiff, on the re-examination of the witness, to inquire in what the danger consisted.

The assignments from the twelfth to the eighteenth, inclusive, are to portions of the charge of the court, and may be treated together. In considering them and the assignments which follow, we must bear in mind that, as to all the material facts of the case, there was no conflict of evidence. It was clearly proved that when Harkins "went into the employment of the defendant he was ignorant of and unfamiliar with the use and operation of machinery;" and, in view of the indisputable facts, we cannot say that there was anything objectionable in the following statement: "It does not satisfactorily appear from the proof that, even if the revolving shaft was as noisy as the defendant's witnesses testified, Harkins could have distinguished its noise from the numerous other sounds which filled the building. He had been in the establishment only a few days. Everything around him was new and unfamiliar, and he was presumably as ignorant as a child of the uses and dangers of the revolving shaft." That "the work Harkins was doing at the time of his death was that of a carpenter, but it can be done by a laborer," was testified by Roach without contradiction. The statement that Harkins "involuntarily and unconsciously moved against the shafting" was substantially correct, even if he was pushed against it, as Roach thinks, by the workmen who were at the other end of the joist assisting in handling it, and who were

ordered by Roach to shove it forward when he had got his end around the studding. And most certainly, if Harkins was thus shoved against the shaft, the defendant's responsibility for the catastrophe was not lessened. The evidence quite justified the statement: "But all the witnesses agree in the opinion that shafting, when in motion, is very dangerous, and that it should be boxed or covered or protected in some manner when in a place where persons are liable to come into contact with it." Nor do we find any just ground for reversal in the following comments of the judge:

"Exactly what was the immediate cause of his being thrown against the shaft,—whether by a slip of the foot on the rail or by his moving sideways towards the shaft, or by the pushing of Roach against the other side with the joist,—it is idle to speculate, but it is reasonably certain that if he had known or had been warned of the fatal danger of coming in contact with that piece of machinery he would have taken care to avoid the risk of doing so; and it is beyond reasonable doubt that if the shaft had been boxed over, guarded with boards, or had been stopped while Roach and Harkins were working there, this accident would not have happened."

These observations were pertinent, and within the sound discretion of the trial judge.

The nineteenth assignment is as follows: That the court erred in charging the jury:

"The servant, knowing the fact of machinery being in motion close by the place where he is working, may be entirely ignorant of the risk he would incur by falling against or coming in contact with it. In such a case it is the duty of the master not only to exercise due care, but good faith, towards the servant, and to inform him of the risks he undertakes."

With reference to the facts of this particular case this instruction was unobjectionable. Paulmier v. Railroad Co., 34 N. J. Law, 151; Railway Co. v. Frawley, 110 Ind. 18, 25, 9 N. E. Rep. 594.

The twentieth and twenty-first assignments are to portions of the following extract from the charge:

"Applying the law to the facts of the present case as they have been developed by the testimony, you will first consider the question whether the defendant was guilty of negligence in ordering Harkins into a situation, to him of unknown peril, but which was known to the defendant, and which could easily have been guarded against by the exercise of ordinary care and prudence on the part of the defendant, either by giving special instructions to Harkins, or by fencing off the end of the shaft near which he was working, immediately before the accident, or by stopping it. It is conceded that unprotected shafting, when in motion, is dangerous, and there was testimony before you to show that it was customary and usual to box, cover, or fence off this class of machinery, including flywheels and cogwheels, when in a situation where workmen or others passing in close proximity to them may be caught. You will consider, also, whether, in the absence of such visible guards as have been mentioned, the omission to stop the operation of the shaft while Harkins was working near it does not constitute negligence. That Harkins was ordered to a place of unusual and imminent peril to an ignorant and inexperienced man is clearly illustrated by the sudden manner of his death. Had he known of and appreciated the danger, it might be said that he assumed the risk by going up the ladder, when ordered to do so by Roach, and taking his station near to the end of the shaft. In that case, with full knowledge of the possibilities, and with the instinct of self-

preservation common to human nature, he might have avoided the accident; but he was ignorant of and inexperienced in the use of machinery and of its dangers, and on that account was all the more entitled to the protection and care of the defendant. That Roach did not give him warning does not excuse the defendant, for the duty of the master to protect his servant under such circumstances cannot be assigned to another. A single board or scantling nailed up between the plate and the girder at the end of the shaft would have protected Harkins. The throwing off of the belt for a few minutes would have stopped the motion of the shaft, and would have afforded him equal security."

Much of what we have already said is applicable to these instructions. There was, we repeat, no conflict of testimony as to the controlling facts of the case. The particular statements of fact contained in the portion of the charge just quoted are, we think, fairly sustained by the proofs. If it were not expressly conceded that shafting in motion is dangerous, there was no evidence to counteract the positive testimony to that effect. It is the settled doctrine that in the courts of the United States it is not reversible error in the judge to express his own opinion on the facts if the rules of law are correctly laid down, and all matters of fact are ultimately submitted to the jury. Rucker v. Wheeler, 127 U. S. 85, 8 Sup. Ct. Rep. 1142; Doyle v. Railway Co., 147 U. S. 413, 13 Sup. Ct. Rep. 333. Now, looking at the whole charge, we think the portions complained of were no more than expressions of the opinion of the trial judge, and did not amount to binding instructions. Moreover, upon the uncontradicted evidence, it is very difficult for us to see how reasonable men could differ upon the question of the defendant's negligence in putting Harkins, without warning, into the position of undoubted danger in which he lost his life. But the judge did not withdraw the question from the jury. He distinctly submitted to the jury the question of the defendant's negligence, and also the question of the alleged negligence of Harkins. The concluding words of the charge were these:

"You will have to consider the question of negligence. It is one of fact, and should be considered by you under the instructions of the court on the law applicable to the particular circumstances of this case. Almost every case of this kind varies in its facts. We have endeavored to state as briefly as we could the points of law which should govern you in making up your verdict. If, on due deliberation, you shall find that the defendant was guilty of negligence, and that Michael Harkins, the deceased, was not guilty of contributory negligence at and before his death, then your verdict will be for the plaintiff. * * * If you find that the defendant was not guilty of any negligence, or that, if so guilty, Harkins was also guilty of contributory negligence, or that his death was caused by the negligence of a fellow servant, then, of course, you must return a verdict for the defendant."

The twenty-second, twenty-fifth, and twenty-sixth assignments relate to the supposed negligence of Roach, and the instructions of the court relating thereto. The defendant, in its third point, asked the court to charge "that, if the jury believe that the accident was caused or contributed to by the negligence of William Roach, who was working with Harkins at the time of his death, the said Roach was a fellow servant of Harkins, and the plaintiff

cannot recover;" and in its fifth point prayed the following instruction: "That if the jury from the evidence believe that the death of Harkins was caused by any negligence on the part of Roach, it was from the negligence of a fellow servant, and the plaintiff cannot recover."

The portion of the general charge complained of in the twenty-second assignment evidently was called forth by these requests, and what the court there said upon the subject of negligence had relation to the respective duties of Roach and the defendant. If there was an apparent assumption of negligence on the part of the defendant, it was in a fair discussion of the defendant's theory of negligence. It was not unqualifiedly affirmed. We quote this portion of the charge:

"On behalf of the defendant it is claimed that, if Harkins' death was caused by the negligence of his fellow servant, Roach, the plaintiff cannot recover. As a general proposition, and under ordinary circumstances, this would be true; but in the present case the direct and proximate cause of Harkins' death was the uncovered and rapidly revolving shaft, of the danger of which he had no knowledge. It was the duty of the defendant to take reasonable precautions in protecting its servants from the danger of exposed machinery. This duty was the special and untransferable duty of the defendant, and the omission to fence off the end of the shafting, or to stop its motion, was the negligence of the defendant, and not the negligence of Roach. It does not appear that Roach had any authority to stop the shaft or to fence off the end of it. He was a carpenter, and, as far as the evidence shows, had nothing to do with this particular piece of machinery."

These instructions were repeated substantially in the specific answers to the defendant's third and fifth points. We find no error therein, nor in the refusal of the court to affirm those points without qualification.

In Hough v. Railway Co., 100 U. S. 213, where a locomotive engineer in the defendant's employ was killed in consequence of defects in the engine, owing to the negligence of the company's master mechanic and foreman, the former of whom had exclusive management of the motive power of the company, and the latter the control of the engineers in assigning them to duty, it was held that the defendant was liable. While recognizing the rule exempting the common master from liability to a servant for injuries caused by a fellow servant, the court states that to the rule there are well-defined exceptions, one of which arises from the obligation of the master not to expose the servants, when conducting his business, to perils or hazards against which they may be guarded by proper diligence on his part. The like ruling was made in Railroad Co. v. Herbert, 116 U. S. 642, 647, 6 Sup. Ct. Rep. 590; and, speaking of the responsibility of the master to his servant, the court said: "Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability." In the very latest decision of the United States supreme court upon the general subject,—Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914,—which, against the trend of some former cases, holds that a fireman on a locomotive engine is a fellow servant with the engineer, we find this emphatic language in respect to the duty

of the master to provide a safe place for the servant when in the performance of his work:

"Again, a master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employe in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employe by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of dicharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employe, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects."

These principles prevail in the courts of Delaware and Pennsylvania. Foster v. Pusey, (Del. Super.) 14 Atl. Rep. 545, 547; Trainor v. Railroad Co., 137 Pa. St. 148, 20 Atl. Rep. 632.

But, again, where a servant receives an injury, occasioned in part by the negligence of his master and in part by that of a fellow servant, the master is liable. Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. Rep. 493; Paulmier v. Railroad Co., supra. We think Roach occupied the position of vice principal, but, even if he was a mere fellow servant with Harkins, and guilty of negligence, the defendant could not escape the consequence of its own negligence.

The twenty-ninth, thirtieth, and thirty-first assignments relate to the instructions of the court in answer to the defendant's requests upon the question of the supposed negligence of Harkins. Without quoting those instructions, we content ourselves with stating that we think they are entirely free from error, especially in view of the final instruction of the court in the general charge. But we must add that we can discover nothing in this record which would sustain a finding that Harkins was guilty of contributory negligence.

The judgment of the circuit court is affirmed.