## BANK OF COMMERCE v. BRIGHT.

(Circuit Court of Appeals, Third Circuit. December 23, 1896.)

No. 22.

1. BANKS AND BANKING—POWERS OF CASHIER—RENEWAL OF NOTES.

The cashier of a bank, who, in addition to his usual powers, is, in the absence of the president, running the bank under the advice of the executive committee, has authority to bind the bank by a contract to renew notes, in consideration of the release by the indorser of a lien on the maker's property.

2. TRIAL—PROVINCE OF JURY—INSTRUCTIONS.

In an action involving the question of the existence and breach of a contract, the court said, in charging the jury: "If * * * you should be satisfied that the defendant's contention on this point is sustained by the evidence, then you would encounter no difficulty, I think, in arriving at the conclusion that the contract was broken by the plaintiff; for, if there was, in fact, such a contract, I do not doubt that the action of the bank * * * constituted a breach of that contract." In other parts of the charge the judge instructed the jury that all matters of fact were wholly for their decision,

.and that it was for them to find the contract and its breach, or the contrary *Held,* that the question of the breach of the contract was not withdrawn from the jury by the instruction quoted.

3. BILLS AND NOTES—RIGHTS OF INDORSER.

One B., who was indorser on notes of the G. Co., held by the C. Bank, held, as security for his indorsements, a chattel mortgage on the G. Co.'s property, worth to him about $50,000. In consideration of an agreement by the bank to renew the notes, and allow the G. Co. to go on in business for a year, without change of its relation with the bank, B. surrendered his mortgage. At the time of the making of the agreement, it was expected that the G. Co. could, in the course of a year, work out of its financial embarrassments. Within a month thereafter, the bank recorded mortgages on the property of the G. Co. held by it, and thereby precipitated its failure, resulting in an almost total loss to its creditors. In an action by the bank against B. on his indorsements, he set up as a counterclaim the breach of the bank's agreement with him. *Held,* that the bank was not entitled to an instruction that, if the contract and its breach were found, there was no evidence of more than nominal damages.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

George Clinton and Richard C. Dale, for plaintiff in error.
John G. Johnson, for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

ACHESON, Circuit Judge.   The agreement set up by the defendant in the pleadings was, in substance, this:   That in consideration of the defendant's surrender of his chattel mortgage upon property of the Genesee Oil Works, Limited, given for his indemnification against loss by reason of his liability upon the paper of said Genesee Company as accommodation indorser or otherwise, the plaintiff bank, from time to time during the period of one year, would renew the paper of said company held by it, and that the state of affairs between the bank and said company should remain unchanged during that year, and the business of said company go on as theretofore; and that any money the company could pay during the year should be applied to the reduction of the paper upon which the defendant was accommodation indorser.   A careful reading of this record has satisfied us that there was abundant evidence to show the existence of such a contract.   It is hard to believe that the negotiations looking to such a contract, which undoubtedly took place between these parties, came to naught in view of their subsequent acts.   Certain it is that the defendant delivered up his chattel mortgage, and that Mr. Warren, the cashier of the plaintiff bank, upon the mortgage being brought to the bank, destroyed it by tearing off the signature.   Aside from the alleged contract, we do not find in all the evidence any satisfactory explanation of the surrender and cancellation of the defendant's mortgage security.   Clearly, the question of the existence of the alleged contract was for the determination of the jury under all the evidence, direct and circumstantial.

The question of the authority of the cashier of the bank, Mr. Warren, to bind the bank by the alleged contract was not dis-

tinctly presented to the court below by any of the plaintiff's points, nor is it specifically raised by any of the assignments of error. We think that there was sufficient evidence of Mr. Warren's authority to act for the bank in this transaction. He had not only all the powers incident to the office of cashier, but at that time he exercised additional discretionary power by reason of the absence abroad of Mr. Smith, the bank's president. Mr. Smith testifies that in his absence Mr. Warren was running the bank under the advice of the executive committee, and that in a general way he had authority to act for the bank as he deemed best for its interests. The bank was the holder of a very large amount of the paper of the Genesee Company, and was deeply interested in keeping the concern going. Two other banks acting in concert with Mr. Warren came into the same general arrangement. At the preliminary meetings of the parties concerned which led up to the contract the counsel for the bank was present with Mr. Warren. Moreover, the plaintiff bank received and has enjoyed the benefit of the surrender of the defendant's mortgage security. It never offered restoration to the defendant, nor gave him an opportunity to put himself in his previous condition. Having thus retained the fruits of the contract made by its cashier in its behalf, the bank may well be presumed to have sanctioned it. Bronson v. Chappell, 12 Wall. 681; Kelsey v. Bank, 69 Pa. St. 426.

Error is assigned to the following portion of the charge of the court:

"If, on the other hand, you should be satisfied that the defendant's contention on this point is sustained by the evidence, then you would encounter no difficulty, I think, in arriving at the conclusion that the contract was broken by the plaintiff, for, if there was in fact such a contract (and I intimate no opinion of my own) as is asserted by the defendant, I do not doubt that the action of the bank in taking its second mortgage, and in recording both its mortgages, constituted a breach of that contract."

This language is not, in terms, a binding instruction upon the question of the breach of contract; and much less can it be so regarded when read, as it must be, in connection with the rest of the charge. The learned judge, in discussing another point, had already said to the jury, "But my impression as to this or any other matter of fact is in no sense binding upon you;" and afterwards, towards the close of the charge, he told the jury, "You, of course, perceive that I mean to leave all matters of fact wholly to you." The judge also said, "If you should determine the question as to the existence and breach of contract adversely to Mr. Bright, you need proceed no further." Then again the judge charged, "Accordingly I have said that if you find the contract and its breach, you are next to consider whether that breach caused any damage;" and still again, "If you find the contract and a breach, with resultant damage, it will still be incumbent on you to fix the amount of that damage." Taking the instructions as a whole it cannot, we think, fairly be said that the court withdrew from the jury the question of the breach of the contract. The particular part of the charge here complained of was at most but the expression of the judge's own

opinion as to a matter of fact, and is not assignable as error.   Doyle v. Railway Co., 147 U. S. 413, 13 Sup. Ct. 333; Car Co. v. Harkins, 17 U. S. App. 22, 5 C. C. A. 326, and 55 Fed. 932.   We may properly add that it is difficult for us to see how it can seriously be asserted that the recording of the plaintiff's mortgage of August 11, 1890, which until June 14, 1893, had been withheld from record, and the taking and recording of the plaintiff's mortgage of June 13, 1893, did not constitute a breach of the contract set up by the defendant.   The whole state of affairs was thereby changed, and the purpose of the contract frustrated.   The inevitable effect of recording these mortgages was to stop the operations and business of the Genesee Oil Works, and break up the concern.   This, in fact, was the immediate result.   Mr. Smith, the president of the bank, admits that this disastrous consequence was foreseen when he ordered the recording of the mortgages.   Nor was it any justification of the bank's action that the Genesee Company was then in pressing need of additional money advances, and that for lack thereof open insolvency was believed by the officials of the bank to be impending.   The bank's contract with the defendant prohibited it from precipitating that insolvency by the course it pursued.   In this connection it is not to be overlooked that the court below squarely left to the jury the determination of the question whether the action of the plaintiff bank did cause the failure of the Genesee Oil Works, the judge instructing the jury that the bank was not liable to the defendant unless it had caused the failure.

The plaintiff's fourteenth point was as follows: "There is no evidence in this case that will warrant the jury in finding that the defendant has suffered damage except nominal."   The denial of this point is assigned for error, and complaint is also made of the instructions of the court on the subject of damages.   The suggestion that the defendant was to be restricted, under the evidence, to nominal damages, is by no means to be accepted.   There was evidence to show that the defendant's indemnifying chattel mortgage was worth to him over $50,000.   This indemnity covered the defendant's accommodation indorsements of the paper of the Genesee Oil Works held by the plaintiff.   This suit was upon renewals of such indorsements.   The defendant's surrender of his security seems to have been made on the faith of the bank's performing its part of the agreement respecting the Genesee Company.   It may be assumed (the evidence justifies the inference) that both parties believed that, if the company were kept a going concern for another year, it would work out of its financial embarrassment.   There was evidence, the weight of which of course was for the jury, tending to show that the oil works, by reason of a recent, newly-added department, had reached such an improved condition that the operation thereof during the year contemplated by the contract would have resulted in large profits.   The contract provided that any money the company should pay during that year was to go in reduction of the defendant's indorsements.   The defendant's mortgage security was surrendered on or about May 15, 1893.   At the end of

one month—on June 14, 1893—the plaintiff put its mortgages on record. The failure of the Genesee Company immediately ensued. The company at once made a voluntary assignment, and attachments against its property were issued. Litigation followed, and the outcome was the paltry sum of perhaps $2,000, saved for the general creditors. The bare recital of these facts is a refutation of the proposition that the defendant was entitled to the allowance of only nominal damages.

In regard to the general instructions of the court upon the question of damages, the bank, it seems to us, has no just ground of complaint. These instructions were as favorable to it as the facts warranted. They very clearly limited the damages assessable to the defendant to compensation for such loss as the evidence showed he had actually suffered by reason of the plaintiff's breach of the contract, whereby the failure of the Genesee Company was brought about, and its business ended. The court, among other things, said:

"Did the Bank of Commerce, in violation of any contract it had made with J. C. Bright, cause the failure of the Genesee Oil Works? * * * I instruct you, as matter of law, that if the Bank of Commerce did so cause that failure, then, but not otherwise, it would be liable to J. C. Bright for any loss to him resulting in consequence of the failure of the Genesee Oil Company, which he would not have sustained if the Bank of Commerce had kept its agreement."

From the peculiar nature of the contract there was inherent difficulty in precisely determining the loss to the defendant resulting from the breach, and the judge merely recognized that difficulty when he observed that "the amount which should be awarded is manifestly incapable of ascertainment by arithmetical calculation, or by any other exact method." The court, however, referring the jury to the evidence bearing upon the subject of damages, said:

"But you will recall that the situation, prospects, and property of the Genesee Oil Company have been quite fully detailed to you by the witnesses, and a certain appraisement on the one side and certain legal proceedings in New York on the other have been brought to your attention as bearing upon the amount of damages, and in that connection have been elaborately discussed by counsel."

—And the court added that the jury should give attentive consideration to every part of the evidence which tended to throw light upon the question of damages. The plaintiff, in its requests, did not ask the court to give to the jury any specific directions as to the measure of damages. Taking into view the entire charge, we think that the instructions touching this branch of the case were adequate, and free from error. We are of the opinion that none of the assignments of error should be sustained, and therefore the judgment is affirmed.