## SOUTHERN DEPARTMENT—EASTERN DIVISION JUNE TERM, 1896.

THE CHEROKEE & PITTSBURG COAL AND MINING COMPANY v. SIMON BRITTON, *as Administrator of the Estate of William James, deceased.*

NO. 36.

1. SECURITY FOR COSTS—*Poverty Affidavit—Who May Make it.* Paragraphs 4682 and 4683, General Statutes of 1889, providing that in any case where the plaintiff, having a just cause of action against the defendant, by reason of his poverty is unable to give security for costs, on affidavit made before the clerk, no bond shall be required, applies as well to a party suing in a representative capacity as an individual.

2. AMENDED PETITION—*Right to Answer.* Where issues have been joined by petition and answer, and the plaintiff is thereafter permitted by the court to amend his petition so as to make his petition more definite as to some allegations therein, and the defendant moves to strike out of the amended petition some of the allegations for redundancy, irrelevancy, and immateriality, and the motion to strike out is sustained, and the petition as thus amended does not state any new matter or change the plaintiff's cause of action or the defense, the defendant is not entitled to further time in which to plead to the amended petition where his original answer contains a full and complete defense to the amended petition.

3. ——— *Amended Answer Unnecessary.* Where issues have been joined by petition and answer, and the plaintiff has permission of the court to file an amended petition, and the amended petition does not change the cause of action or the defense, it is not error for the court to refuse the defendant leave to file an amended answer where he can prove all the defenses set up in the amended answer, offered to be filed, under his original answer.

4. MASTER AND SERVANT—*Negligence.* Where a duty enjoined either at common law or by statute is omitted, and by reason thereof injury occurs to some of the employees in the service of the delinquent party, it is the direct negligence of the person owing the duty and not that of his employees.

Coal Co. v. Britton.

5. —— *Coal-mine—Liability for Injury to Employee.* No duty devolving upon the owner or operator of a coal-mine, or other work of a dangerous character, can be delegated to an agent or employee so as to relieve the owner or proprietor from his personal responsibility. No duty required of him for the safety and protection of his employees can be transferred so as to exempt him from his liabilities. He may, and often must, delegate the performance of such duties to subordinates, but he assumes the responsibility to all of his servants for the acts of those subordinates in that particular capacity, to the same extent as if those acts were literally his own.

6. —— *Risks Assumed by Employee.* Where a person enters into the employment of another, as a general rule he is presumed to be competent to perform the kind of service required of him by such employment, and he is held to assume the ordinary risk and hazard incident to the business upon which he enters, so far as the risks at the time of entering upon the business are known to him, or should be readily discernible by a person of his age and capacity in the exercise of ordinary care. The risks must be inherent in the business, and not arise from defects in the master's discharge of his personal duties.

7. EVIDENCE—*Demurrer Properly Overruled.* It is not error for the court to overrule a demurrer to evidence where there is some evidence tending to prove each material fact necessary to entitle the plaintiff to recover.

8. MASTER AND SERVANT—*Liability of Mine Owner.* While it is the duty of the owner or operator of a coal-mine to provide his employees with a reasonably safe place to perform their labor, he is only bound to exercise ordinary care in providing for the safety of the men engaged in the mine so far as it could reasonably be expected. He is not an insurer against unforeseen accidents which are liable to happen from the action of the weather or the unanticipated slipping of earth, slate, coal or stone from the walls or roof of the mine.

9. —— *Evidence Necessary to Fix Liability.* Before the owner or operator of a coal-mine can be held liable for the death of one of the employees engaged in mining coal, caused by the falling of loose rock or earth from the roof of the mine, it must be shown that the owner or operator had previous knowledge of the defective or dangerous condition of the roof, or by the exercise of ordinary care and caution could have discovered the defective condition thereof.

10. —— *Duty of Mine Owner.* The owner or operator of a coal-mine is only held to the exercise of ordinary care in the employment of competent and skilful operators and superintendents,

and in the construction and repair of the mine, so as to make it reasonably safe for the protection of those employed therein.

11. ——— *Improper Evidence to Prove Negligence.* It is not competent, on the trial of an action for damages for causing the death of another by negligence, to permit the plaintiff on the trial to prove that, soon after the accident occurred, the company repaired the roof of the mine at the point where the loose rock fell. This evidence does not tend to prove that the mine owner had any knowledge of the defective condition of the mine at or before the falling of the rock.

MEMORANDUM.—Error from Crawford district court; S. H. ALLEN, judge. Action by Simon Britton, as administrator of the estate of William James, deceased, against The Cherokee & Pittsburg Coal and Mining Company to recover damages for the killing of plaintiff's intestate. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein, filed June 2, 1896, states the material facts.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*M. Byrne,* and *Kimball & Osgood,* for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: This suit was commenced by Simon Britton, as the administrator of the estate of William James, deceased, against the Cherokee & Pittsburg Coal and Mining Company to recover damages for wrongfully causing the death of William James, which suit was brought by the administrator for the benefit of the father and mother of William James. To the petition filed by the administrator the following affidavit is attached.

"I, Simon Britton, do solemnly swear that the cause of action set forth in the petition hereto pre-

fixed is just, and I do further swear that by reason of my poverty I am unable to give security for costs."

On the 18th day of October, 1889, the defendant below filed its motion to quash the summons in said action, for the following reasons:

"1. That the plaintiff in said cause did not, prior to the issuance of said summons, give a bond approved by the clerk of said court, conditioned that the plaintiff would pay all costs that might accrue in said action in case he should be adjudged to pay them, or in case the same could not be collected from the defendant, as required by law, and did not, prior to the issuance of said summons, deposit with the clerk of said court $15 or any other sum in lieu of such bond for costs.

"2. That said plaintiff is not the legally appointed and qualified administrator of the estate of William James, deceased, for the reason that said William James did not leave any estate in the county of Crawford, in the state of Kansas, to be administered upon.

"3. That said plaintiff, Simon Britton, is not a suitable person to be appointed administrator of the estate of William James, deceased, by reason of his poverty and inability to give a bond.

"4. That said Simon Britton, prior to the commencement of this action, did not give a good and sufficient bond with two or more sureties in a sum not less than double the value of the personal property of the estate of William James, deceased, as required by law."

This motion was overruled by the court and excepted to by the defendant below, and this ruling is the first error complained of in this court.

It is contended by plaintiff in error that, as paragraph 4682 of the General Statutes of 1889 requires the plaintiff, before he can commence an action, or a summons issue upon the petition filed in the office of the clerk of the district court, to file with the clerk of

said court a bond to be approved by the clerk, conditioned that the plaintiff will pay all costs that may accrue in said action which he is adjudged to pay, or in lieu thereof make a deposit of $15 with the clerk before he has any authority to issue a summons, no bond for costs was given, and the clerk was not authorized to issue summons; that as the summons was issued without a bond being given or the deposit of $15 with the clerk, the summons should be quashed and the defendant not be required to answer in said action, nor be put to the trouble and expense of appearing and defending said action; that the provisions of the statute in paragraph 4682, which provides that, in case the plaintiff make an affidavit setting forth that he has a just cause of action against the defendant, and on account of his poverty is unable to give such security for costs, no bond shall be required, and of paragraph 4683, do not apply to actions brought by a person in his representative capacity, but only refer to actions brought by an individual, where he has a just cause of action and on account of his poverty is unable to give the bond required or deposit the sum of $15. We do not think this position tenable. The statute makes no distinction between a party suing in his individual capacity or a party suing in a representative capacity. The language of paragraph 4682 is:

"*Provided*, That in any case where the plaintiff or plaintiffs having a just cause of action against the defendant or defendants, by reason of his, her or their poverty, is or are unable to give such security for costs, on affidavit of the plaintiff or plaintiffs made before the clerk that such is the fact, no bond shall be required."

Counsel for plaintiff in error insist that as paragraph 2787, General Statutes of 1889, requires an ad-

ministrator, on his appointment, to qualify by giving a bond with two or more sufficient sureties in a sum double the value of the personal property of the estate, payable to the state of Kansas, with conditions therein mentioned, before entering upon the duties of administrator such bond must be given, and that before the commencement of this action he must give the bond required by paragraph 4682 of the General Statutes of 1889 ; that unless these bonds were executed as required by the statute he would not be authorized to commence this suit, nor have any standing as an administrator ; that this action is not brought by him as an individual, but in his representative capacity as administrator of the estate of William James, deceased ; that, if he was able to give the bond required before entering upon the duties as administrator, he certainly was able to give a bond for costs, or at least make a deposit such as the statute requires. We do not think that this contention is sound. The bond he gives as administrator is for the faithful performance of the duties of an administrator. It is for the personal obligation of the administrator and for his individual liability. The bond for costs in the prosecution of the action for damages is an obligation against the estate of William James, deceased. The action is prosecuted by the administrator in his representative capacity, but is for the benefit of the next of kin of William James, deceased, and is not the obligation of Simon Britton, individually. He is not personally liable for the payment of the costs accruing by reason of the prosecution of such action. He may be abundantly able to give security for any amount in a matter where he would be personally liable, but the estate may be entirely insolvent, and, on account of extreme poverty

of the beneficiaries of said estate, be entirely unable to give the bond required by law, or to make the deposit required before summons can issue, and, upon the making of the affidavit required by law, he is entitled to commence the action and prosecute it to a final determination.

For a second assignment of error, it is set forth that, after the overruling of the motion of the defendant below to quash the summons, defendant filed its answer to the petition, and the plaintiff below filed an amended petition, after having obtained leave of the court to do so. This petition stood in the place of the original petition and became the petition in the case. The plaintiff below alleged :

"And now comes the plaintiff, Simon Britton, administrator of the estate of William James, deceased, and by leave of the court first had and obtained files this, his amended petition, and says : That on the 22d day of October, 1889, he was duly appointed by the probate court of Crawford county, Kansas, administrator of the estate of said William James, deceased, and immediately qualified and entered upon his duties, and is now acting as such; that the said William James was of the age of 21 years when he died ; that his said death occurred on or about the 19th day of July, 1889 ; that the said William James died unmarried, intestate, leaving surviving him his father and mother and eight brothers and sisters, all of whom are residents of Roanoke, Woodford county, Illinois, and are in poor and indigent circumstances in this, that they have no real or personal property or other investment from which any income is or might be derived ; that the whole of said family were dependent for support upon the earnings of the said William James and one other son, both of whom were employed at manual labor ; that the father of the decedent was an invalid soldier of the late civil war and drew a small pension from the government of the United States of $8 per month, but has been unable

to do any work whatever during the past five or six
years, and since the commencement of this action has
died; that said William James previously to his death
contributed all of said earnings to the support of said
family and they had a reasonable expectation that he
would continue to do so had he lived; that said
William James at the time of his death and pre-
viously thereto was employed by the defendant in its
mine at Frontenac, Kan., as a driver, and his serv-
ices were reasonably worth the sum of $2 per day.
Plaintiff says that he is a resident of the state of Kan-
sas, and is an uncle of the said William James, de-
ceased. Plaintiff further says that the said defendant,
the Cherokee & Pittsburg Coal and Mining Company,
is a corporation duly organized and incorporated
under the laws of the state of Kansas, and at the time
of the injury received by the said William James and
his death, and for a long time previously thereto, was
the owner of and operated a coal mine at Frontenac,
in Crawford county, Kansas, known as Frontenac
Mine No. 1; that on the 19th day of July, 1889,
while the said William James was in the employ of
defendant in said mine as a driver, and the said de-
fendant so carelessly, negligently and unskilfully con-
ducted and operated its said mine that a large rock
fell from the roof of said mine upon the said William
James, bruising, crushing and injuring him inter-
nally, and in his back, legs, arms, and sides, so that
by reason thereof he, the said William James, lingered
in great bodily pain and agony for the space of two
hours, when he died. Plaintiff further says that the
carelessness, negligence and unskilfulness of defend-
ant consisted in this, that it knowingly employed
careless and unskilful servants and miners in said
mine, whose names are to plaintiff unknown; that
it did not properly construct, timber or support the
roofs of the side and main entrances and passage-
ways of said mine where said injury occurred, nor
secure the same in a workmanlike manner so as to
render them safe for persons passing along beneath
them. Plaintiff further says that said William James

at the time he received his said injury was in good bodily health, and was regularly engaged in his business as a driver in said mine and was without fault or negligence on his part. Plaintiff says that he, as administrator of the estate of said William James, deceased, and Sarah James, the mother of decedent, and the eight brothers and sisters of decedent, have suffered damage by his death in the sum of $10,000.

"Wherefore plaintiff, as such administrator, demands judgment against the said defendant in the sum of $10,000, his damages so as aforesaid sustained, for the benefit of the heir and next of kin of the said William James, deceased, and for costs of this action."

The defendant filed its motion to strike out certain matters in the amended petition as redundant, irrelevant, and immaterial, to wit:

"That the father of deceased was an invalid soldier of the late war and drew a small pension from the government of the United States of $8 per month, but has been unable to do any work whatever during the past five or six years, and since the commencement of this action has died:"

On the argument of the motion the plaintiff below confessed the same, and the court made an order striking out of the petition that portion claimed to be redundant and irrelevant, and after the making of said order there was no amendment made to the petition, nor was the same refiled.

After the motion to strike out of the amended petition the redundant and irrelevant matter had been sustained and the court had ordered the same stricken out, and the same not having been refiled or amended, the defendant below requested that it be given the statutory time thereafter in which to plead to the petition as thus amended. No objection to the application to file an answer was made by the plaintiff below,

but the court, upon its own motion, without being asked so to do, denied the application of defendant to file an answer, stating that the answer which was filed to the original petition stood as an answer to the amended petition, and that no additional answer need be filed. The defendant below thereupon presented the following answer to the amended petition:

"Now comes the above-named defendant, the Cherokee & Pittsburg Coal and Mining Company, and for its answer to the amended petition of the plaintiff filed herein—

"1. Denies each and every allegation, word, matter and thing in said amended petition alleged and contained, and the whole thereof.

"2. And for a second and further answer to said amended petition defendant avers, that if the said William James, deceased, was injured and killed at the time and place alleged and set forth in said amended petition, that said William James, deceased, by his own acts contributed to his injuries and death, and that his said injuries and death were caused by the carelessness, negligence and want of due care of and on the part of said William James, deceased.

"3. And for a third and further answer to said amended petition filed herein, and as a defense thereto, said defendant says that said plaintiff ought not to be permitted to prosecute or maintain this action in said amended petition alleged, and avers that the same should be dismissed and discontinued by said court, for the reason that said plaintiff did not, prior to the issuance of said summons, give a bond, approved by the clerk of said court, conditioned that the plaintiff would pay all costs that might accrue in said action in case he should be adjudged to pay them, or in case the same could not be collected from the defendant, as required by law, and did not, prior to the issuance of said summons, deposit with the clerk of said court $15 or any other sum in lieu of such bond for costs, as required by law.

"4. And said defendant, further answering said

amended petition filed in said cause, specifically denies that said plaintiff was duly appointed administrator of the estate of said William James, deceased, or that he thereafter duly qualified as such, but avers that the attempted and alleged appointment and qualification was done for the sole and only purpose of commencing and attempting to maintain the above-entitled cause of action, and for no other purpose and on no other account.''

It requested of the court leave to file the same, and the court denied the request, and the defendant below duly excepted.    Was this refusal of the court such an error as was prejudicial to the defendant below?    Ordinarily, where a party asks the court for leave to file an additiona¹ or amended pleading, the request is granted if the adverse party does not object; and in the furtherance of justice, where a party asks leave to amend his pleadings or to file additional pleadings, if its object and purpose are more fully to state the matters pertaining to the cause of action or defense, and not for mere delay, the court, in the exercise of sound discretion, ought to allow the filing of the same.    But where issues have been joined by petition and answer, and the plaintiff is given leave to file an amended petition to correct some mere defective statement of facts in the original petition which does not change the cause of action or the nature of the defense, the defendant is not entitled as a matter of right to time in which to file an amended or an additional answer, but the court, in the exercise of sound discretion, may give him time to file an amended or supplemental answer where substantial justice may require the same ; but where the amended petition changes substantially the plaintiff's cause of action or renders a different line of defense necessary, then the defendant as a matter of right is entitled to file an amended or supple-

mental answer. So the question in this case resolves itself into the proposition whether the amended petition changed substantially the plaintiff's cause of action, or was such as to render necessary a different line of defense from the facts set up in the original petition. Upon careful comparison of the original petition with the amended petition we are unable to see wherein the amended petition states any different cause of action from the original petition. The original petition alleges that plaintiff, Simon Britton, was, on the 22d day of October, 1889, duly appointed by the probate court of Crawford county, Kansas, administrator of the estate of William James, deceased, and has qualified and is now acting as such administrator; that William James died on or about the 19th day of July, 1889, unmarried, leaving surviving him his father and mother, who are residents of Roanoke, Ill.; that decedent was 21 years old at the time of his death; that the Cherokee & Pittsburg Coal and Mining Company is a corporation; and then sets out that William James was an employee of the coal and mining company, and alleges that his death was caused by the carelessness and negligence of the company, (giving the particular facts in which the negligence consisted which resulted in his death,) and that William James, at the time of his receiving the injuries, was in the exercise of due care and caution, and that the injuries were received without any fault of his own. To this petition the defendant answered by a general denial of all the allegations set forth in the petition. Under this answer the defendant below could prove any defense that it might have. The amended petition sets out the same state of facts contained in the original petition, and did not state any additional cause of action, and the answer to the original petition was

a full and complete answer to the amended petition. The only object we can see for the filing of the amended petition was to aver that since the commencement of the action the father of William James had died, and that the mother and sisters and one brother survived, and that during the lifetime of decedent he contributed to the support of his parents, and, had he lived, they had every reason to believe that he would have continued to furnish them with support. The defendant below could have proved, under the answer already filed, all the matters set out in the amended answer proposed to be filed. There was no material error in the refusal of the court to grant defendant below time in which to plead to the amended petition, or in refusing leave to file the amended answer presented.

It is contended by plaintiff in error that the plaintiff below was not entitled to recover under the pleadings and evidence, and that the verdict of the jury should have been in favor of the defendant below. In support of this contention it is urged that the evidence failed to prove any negligent act on the part of the coal and mining company, as alleged in his amended petition, or that, as the amended petition alleged,

"the carelessness, negligence and unskilfulness of the defendant consisted in this, that it knowingly employed careless and unskilful servants and miners in said mine, whose names are to the plaintiff unknown; that it did not properly construct timbers or support the roofs of the side and main entrance and passageways to said mine where said injury occurred, nor secure the same in a workmanlike manner, so as to render them safe for the persons passing along beneath them."

That these are the only acts of negligence charged against the coal and mining company; that the plain-

tiff below must stand or fall upon the proof of these allegations; that he could not recover against the defendant for other or different acts of negligence not charged in the amended petition.

Article 8, chapter 80, General Statutes of 1889, provides what pleadings may be filed in an action, the time in which they may be filed, the effect of an amendment, and that no variance between the allegations and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. "When the variance is not material the court may direct the facts to be found according to the evidence, and may order an immediate amendment without cost."

It is a rule of evidence, rather than of pleading, that the evidence must agree with the allegations of the pleadings. The code of civil procedure requires the plaintiff to state in his petition the facts constituting his cause of action in ordinary and concise language and without repetition, and the proof on the trial should agree with the statement of facts in the pleadings. Unless the variance of fact in the evidence from the statements in the pleadings is material and likely to mislead the opposite party, or the jury, it will not affect the rights of the party on the trial or the verdict of the jury rendered therein.

Plaintiff below based his right of recovery upon the fact that the decedent lost his life while an employee of the Cherokee & Pittsburg Coal and Mining Company in its coal-mines at Frontenac, and through the negligence of said coal and mining company, and states the facts constituting such negligence. Negligence is defined by Cooley to be " the failure to observe for the protection of the interest of another person that de-

20—KAN. APP.

gree of care, protection and vigilance which the cir-
cumstances justly demand, whereby such other person
suffers injury.'' The question of the negligent act
charged in the amended petition and upon which this
case was tried by the jury was a question of fact for
the jury, and the verdict of the jury based on the evi-
dence should not be disturbed by this court unless
there was no evidence whatever to support the verdict.
Where a cause has been tried before the court and a
jury, and the jury has returned a verdict on the evidence
and the trial court has sustained the verdict, it should
not be set aside or disregarded by a reviewing court un-
less there is an entire want of evidence to support it.
The evidence in this case showed that William James,
at the time he was injured, was employed by the
Cherokee & Pittsburg Coal and Mining Company in
shaft No. 1, Frontenac; that he was employed as a
driver, hauling coal on the cars in the mains, with a
mule; that he was drawing, at the time he was in-
jured, eight or nine cars loaded with coal, going east
toward the main shaft. No person was present with
him at the moment he was injured, but he was found
two or three minutes after he was hurt. The atten-
tion of one of the miners was attracted by hearing the
rock fall, and he went immediately to see what was
the matter, and found James lying down on one side
of the car, in the fifth north entry, near the switch,
with his leg under a large rock which had fallen from
the roof of the mine. He was about six inches from the
first car on the trip. The rock was lifted and he was
removed from under it. When he was taken out from
under the rock he was so badly injured that he could
not raise himself, and he had to be carried out of the
mine. The stone that had fallen from the roof was
about eight or nine feet long, three feet wide, and

about 12 inches thick. This rock had been loose for about one week before it fell. There were faults in the roof of the mine at some places, which miners called "rolls in the roof." Prior to the time of the injury to James there had been some repairs of the roof at the place where the injury occurred—some loose rock pulled down. These repairs had been made five or six days before the injury. The repairs had been made by fire-bosses who worked for the company. The evidence shows the manner in which the shaft and mine were constructed; the different apartments; their number and location; the different tracks upon which coal was brought out of various portions of the mine to the main shaft; the location of the switches; and the manner in which the cars were loaded, and the coal hauled to the main shaft. In the case of *U. P. Rly. Co. v. Rawlins,* 5 Kan. 181, VALENTINE, J., delivering the opinion of the court, says:

"Negligence is a question of fact for the jury. It is for them to determine whether there had been any negligence, and its nature and degree. Even where the circumstances are all admitted, if there are any doubts as to what they prove, it is still a question for the jury. It is not the duty of the court to draw inferences from the evidence, but only to pronounce legal conclusions from the facts admitted or properly found."

The jury by their verdict have found all the facts involved in the issues in this case, and it is conclusive of the truth of the facts so found. The supreme court of this state, as well as the courts of other states, have repeatedly held, where the issues are properly presented to a jury under the pleadings and evidence, that the verdict of the jury is conclusive of all questions submitted to them, and should not be disturbed unless there is such manifest want of evidence to sustain the verdict as to indicate that the jury were con-

trolled by some undue influence and had thereby disregarded the evidence on the trial. The question as to whether William James was guilty of negligence which contributed directly to the injury which resulted in his death was also a question of fact, and was properly submitted to the jury, and by them taken into consideration in determining their verdict in this case. (*U. P. Rly. Co. v. Geary*, 52 Kan. 320.)

It is contended that, if there was any negligence proved, it was that of some fellow servant of the deceased, and the plaintiff could not recover, as they were not vice-principals representing the company; that no part of the duties of the superintendent, general manager or mining boss required them to perform these duties, but when duties of that kind were performed, they were done by co-employees and fellow servants of the deceased; that if the injury was caused by the negligence of any one other than the decedent, it was that of co-employees and fellow servants of the deceased, for which the coal and mining company would not be liable. It was the duty of the company to exercise reasonable care and diligence in providing William James with a reasonably safe place to work, and to provide reasonable arrangements to protect him from danger while performing work, and to make the roof and walls of the mine and shaft reasonably secure against the falling of loose rocks and earth. The statutes of this state provide :

"In order to better secure the proper ventilation of every coal-mine, and promote the health and safety of the persons employed therein, the owner, agent or operator shall employ a competent and practical inside overseer, to be called 'mining boss,' who shall keep a careful watch over . . . traveling-ways, . . . and shall see that as the miners advance their excavations all loose coal, slate and rock overhead are care-

fully secured against falling in upon the traveling-ways. . . . And every mine shall be supplied with sufficient prop timber, of suitable length and size for the places where it is to be used, and kept in easy access to." (Gen. Stat. 1889, ¶ 3850.)

This statute was enacted for the protection of health, comfort and safety of miners engaged in operating coal-mines, and any failure of the owner or proprieter to observe the duties imposed upon him by statute is negligence.   Paragraph 3856 provides :

"For any injury to person or property occasioned by any violation of this act, or any wilful failure to comply with its provisions by any owner, lessee or operator of any coal-mine or opening, a right of action against the party at fault shall accrue to the party injured for the direct damages sustained thereby ; and in case of loss of life by reason of such violation or wilful failure a right of action against the party at fault shall accrue to the widow and lineal heirs of the person whose life shall be lost, for like recovery of damages for the injury they shall have sustained."

If the company failed to furnish the decedent a safe place in which to do his work, or failed properly to protect the roof of the mine against the fall of loose rock and earth, and the injury to the decedent was caused thereby, it was the negligence of the company, and not of his co-employees.   Where a duty enjoined upon a party, either at common law or by statute, is omitted, and by reason thereof injury occurs to some of the employees in the service, of the delinquent party, it is the direct negligence of the person owing the duty, and not of his employees.   No duty devolving upon the owner or proprietor of a mine, or other work of a dangerous character, can be delegated to an agent or employee, so as to relieve the owner or proprietor from his personal responsibility.   No duty required of him for the safety and protection of his

employees can be transferred, so as to exempt him from his liability.   He may, and often must, delegate the performance of such duties to subordinates ; but he remains responsible to all of his servants for the acts of these subordinates in that particular capacity, to the same extent as if those acts were literally his own.

It is also insisted that the plaintiff below is not entitled to recover in this action because, at the time the decedent entered the service of the company, he assumed the ordinary risks incident to his employment; that the defendant below was guilty of no negligence in its management and operation of the mine ; that if it was guilty of any negligence the deceased was aware of the fact, or could have been aware of it by the exercise of reasonable care, and, making no complaint to the officers of the mine as to the condition of the mine, he waived such negligence. Where a person enters into the employment of another, as a general rule he is presumed to be competent to perform the kind of service required of him by such employment, and he is held to assume the ordinary risks and hazards incident to the business upon which he enters, so far as the risks, at the time of entering upon the business, are known to him, or should be readily discernible by a person of his age and capacity in the exercise of ordinary care.   But he does not assume any risks which are not known or discernible, nor any which do not exist at the time when he enters his master's service, and to which his attention is not called before he suffers injury therefrom.   These risks, moreover, must be inherent in the business, and must not arise from defects in the master's discharge of his personal duties.   The evidence in this case does not show that the mine of the defendant be-

low was in an unsafe and dangerous condition at the time William James entered the employment of the company, nor does the evidence show whether the deceased at any time knew of the dangerous condition of the roof of the mine at the point where he was injured until the injury occurred. While it is shown by witnesses on the trial that the roof had been in a dangerous condition for five or six days before the injury happened, and the evidence shows that the deceased passed over the track and under this loose rock several times during each day, yet it is not shown whether the dangerous condition was of such a character as a person of ordinary prudence must have known, or with reasonable care and prudence ought to have known. The questions of the condition of the roof of the mine, and of the decedent's opportunities to have discovered the defect in the roof, were all matters of fact before the jury and were all properly submitted to the jury, under proper instructions of the court, for their determination.

On the conclusion of the evidence of the plaintiff below the defendant demurred to his evidence, on the ground that the evidence was not sufficient to prove a cause of action in favor of the plaintiff against the defendant. The demurrer was overruled by the court and the defendant duly excepted, and this ruling is assigned as one of the errors for the consideration of this court. It is claimed by plaintiff in error that the evidence did not prove a cause of action against the coal and mining company, and that the demurrer ought to have been sustained. It is unnecessary for us to go over and repeat the evidence in this opinion, as we have already recited some of the most important portions of it. We think there was some evidence on the trial tending to prove all the facts necessary to sustain

the verdict of the jury. The demurrer to the evidence of the plaintiff admits every fact most favorable to him which the evidence tends to prove, and in considering the demurrer the court is not called upon or authorized to weigh the evidence; and if there is any evidence tending to establish the issues made by the pleadings such demurrer should be overruled.

We now come to the consideration of the most vital and important question involved in this whole case: Was the company liable for causing the death of William James? While it was its duty to provide him with a reasonably safe place to perform the labor he was engaged in, it was only bound to exercise ordinary care in providing for the safety of the men engaged in the mine, so far as it could reasonably be expected. It was not an insurer against unforeseen accidents which are liable to happen from the action of the weather or the unanticipated slipping of earth, slate, coal or stone from the walls or roof of the mine. In the case of *Berns v. Coal Co.*, 27 W. Va. 285, Johnson, P. J., in delivering the opinion of the court, says:

"The owner of a coal-mine is not required to resort to the most expensive method for keeping his mines free from fire-damp, in order to escape responsibility for injury to his servants working in the mine caused by the explosion of the fire-damp. If he has reasonably safe methods in use for the proper ventilation of the mine, and uses reasonable care to keep the mine properly ventilated, and fire-damp expelled therefrom, he will not be responsible. He is not held to extraordinary care."

There was but little evidence that the company, its officers or managers, whose duty it was to inspect and keep the mine in repair, had any knowledge of the defective or dangerous condition of the roof before the

stone fell and injured James. In fact, the jury found the following, in answer to special questions:

"Ques. 6. Was said rock known to be loose or in a dangerous condition before the accident? Ans. No evidence to show it was."

"Q. 8. Was not the roof immediately above the place where the accident occurred considered safe by the miners and other employees of the company? A. Yes."

Neither the evidence nor the findings of fact show that the superintendent or bosses in the mine had any knowledge of the defective condition of the roof, or by the exercise of ordinary care in the examination could have discovered the defective or dangerous condition of the roof, before the accident. So far as the evidence proves, the deceased, William James, had the same means of discovering the danger that the company had. Whether this was a latent defect, or one that could have been discovered by ordinary care and prudence, is not very satisfactorily shown.

On the trial of the case, the court permitted the plaintiff below to prove that a few days after the accident the company made repairs in the mine in and about clearing up of the fall and putting in timbers and braces at the place where the slate or rock fell. We think that this testimony was erroneously admitted, and was prejudicial to the defendant. It was manifestly to go to the jury for the purpose of establishing the fact that the place where the rock fell was in an unsafe and dangerous condition at the time of the accident, and the fact that repairs were made after the accident was an admission on the part of the company that the roof there was unsafe before the alleged occurrence. We do not think that this evidence should have been admitted. It tended greatly to prejudice the defendant on the trial of the case, as

the defendant could only have been held liable for the death of James in case it had knowledge of the unsafe and dangerous condition of the roof of the mine before the falling of the stone, or by the exercise of ordinary care and prudence it could have discovered the dangerous condition of the roof. In the case of *St. L. & S. F. Rly. Co. v. Weaver*, 35 Kan. 433, VALENTINE, J., delivering the opinion of the court, says:

"The evidence of this change in the dimensions of the waterway does not of itself prove negligence; it does not prove that the railway company had notice of the insufficiency of the culvert prior to the accident, nor that it might have had such notice by the exercise of reasonable diligence. . . . It at most only tended to prove by way of admission and as a fact that the culvert was too small, and that the company obtained knowledge of the same, *not before, but after*, the accident."

The fact that the company made repairs after the stone fell is evidence that the company at that time had knowledge of the defect in the roof, but it does not tend in any manner to prove that such knowledge existed before the injury to the deceased. In the case of *Morse v. Railway Co.*, 30 Minn. 468 — an action to recover damages for negligently causing the death of the intestate, where decedent was injured by reason of a defective switch — on the trial of the case the plaintiff was permitted to show that after the accident the railway company repaired the switch alleged to have been defective, following several cases decided by the supreme court of Minnesota. The supreme court, after citing the former decisions, says, through Mitchell, J.:

"But, on mature reflection, we have concluded that evidence of this kind ought not to be permitted, under any circumstances, and that the rule heretofore adopted by this court is, on principle, wrong; not for the reason

given by some courts, that the acts of the employees
in making such repairs are not admissible against
their principals, but upon the broader ground ·that
such acts afford no legitimate basis for construing
such an act as an admission of previous neglect of
duty.   A person may have exercised all the care which
the law required, and yet, in the light of his new ex-
perience, and after an unexpected accident has occurred,
and as a measure of extreme caution, he may adopt
additional safeguards.   The more careful a person is
— the more regard he has for the lives of others —
the more likely he would be to do so, and it would
seem unjust that he would not do so without being
liable to have such acts construed as an admission of
prior negligence.   We think such a rule puts an un-
fair interpretation upon human conduct and virtually
holds out an inducement for continued negligence.
*Dougan v. Transportation Co.*, 56 N. Y. 1; *Sewell v. City
of Cohoes*, 11 Hun, 626; *Baird v. Daly*, 68 N. Y. 547;
*Payne v. Railroad Co.*, 9 Hun, 526; *Salters v. Canal Co.*,
3 id. 338; *Dale v. Railway Co.*, 73 N. Y. 468.''

The special findings of fact are inconsistent with
the general verdict of the jury and are contrary to the
evidence, and should have been set aside and a new
trial granted.   There are several other matters alleged
as error occurring on the trial of this case, but as the
case must be reversed, and remanded to the district
court for a new trial, the same matters may not again
occur on a retrial of the case.   We deem it unneces-
sary to notice them further in this opinion.

The judgment is reversed, and the case remanded
to the district court for a new trial.

All the Judges concurring.