126 241
131 740

---

C. F. BARTO v. IOWA TELEPHONE Co., Appellant.

**Telephones:** ELECTRICITY: NEGLIGENCE.  A telephone company which
1  acquiesces in the use of its poles by an electric company, is charged
with the duty of seeing to it that the light wires do not expose
its employés to unusual danger.

**Same.**  A telephone company permitting the use of its poles for carry-
2  ing electric light wires, must use a degree of care for the protection
of its employés commensurate with the danger involved.

**Negligence:** EVIDENCE.  In an action by a telephone lineman for in-
3  juries caused by a defective electric light wire carried on the poles,
of the telephone company, the evidence is reviewed and held to
justify a submission to the jury of the issue of defendant's negli-
gence.

**Assumption of Risk.**  A telephone lineman not an inspector of wires,
4  nor charged with the duty of inspecting or testing live wires,
does not assume the risk of an injury resulting from a defective
light wire.

**Contributory Negligence:** EVIDENCE.  A telephone lineman was in-
5  jured by coming in contact with a defectively insulated electric
light wire which the defendant carried on its poles; under the evi-
dence it is held that the question of the lineman's contributory
negligence was properly submitted to the jury.

*Appeal from Woodbury District Court.*— HON. GEO. W.
WAKEFIELD, Judge.

SATURDAY, DECEMBER 17, 1904.

APPEAL from judgment for damages caused by a fall
from a telephone pole.   See 119 Iowa, 179.— *Affirmed.*

*A. Van Wagenen,* for appellant.

*Henderson & Fribourg,* for appellee.

LADD, J.— On the 18th day of April, 1901, the plain-

tiff was employed as lineman by defendant and was engaged
in stringing what are called "lead offs," being connections
from the main line of telephone wires to residences or places
of business of patrons.  After ascertaining the wires with
which to connect a laundry near the intersection of Court
and Fourth streets he advised the wire chief, and was in-
formed that a certain telephone was connected with a metal-
lic circuit when it should have been a common return.  In
a metallic circuit two wires run all the way from the tele-
phone to the central office, while in a common return one
wire runs from the office to the telephone, and the current
travels back over a wire common to several telephones, some-
times called the "McClure" wire.  Plaintiff, in proceding
to remedy the defect, climbed the pole on which, about thirty
feet from the ground, were two crossbars, and above these a
"hickey" had been placed by the Sioux City Electric Light
Company.  A "hickey" consists of two iron strips' fastened
to the pole and extending above its end, supporting a cross-
bar.  On this crossbar there were two electric light wires
of one hundred and ten volts, and two primary wires, con-
necting alternating currents of one thousand and fifty volts
each.  A wire tapped one of these and ran down to the
middle bar, and, after being wound around a peg, onto the
fuse box, which was attached to the lower crossbar west of
the post, and over the end of a supporting brace extending
from the pole to the crossbar.  This fuse box was six inches
long by three or four inches wide, and is described as "fu-
sible plug down in a receptacle to blow out or melt out in
case of a short circuit on the line."  A substance of lower
conductivity than the wire is placed in it, and melts when
two wires come together.  A converter was attached to the
north side of the pole, the top of it at the middle of the lower
crossbar.  This was about eighteen inches high and twelve or
fifteen inches wide.  Its purpose was to convert the current
from a higher into others of lower voltage.  In this instance

the current passing into a store near by was reduced to one hundred and four volts.   A connecting coil, about one and one-half inches in diameter, of wire three-thirty-seconds of an inch thick, extended from the fuse box to the converter. Back of this wire was the iron brace previously mentioned, and as the coil was longer than seems to have been necessary it is supposed to have been blown back and forth by the wind against the brace until the insulation wore from the wire. The telephone wires were stretched over the middle and lower crossbars, save the common return, which was attached to a bracket fastened on the east side of the pole at the lower end of the brace supporting the middle crossbar.   The plaintiff cut the return wire of the metallic circuit and attached it on the common return, which was on the bracket.   He then had hold of the bracket with one hand, and in descending grasped the iron brace of the wire coil connecting the fuse box and the converter, when, as the evidence tended to show, he was struck by a current of electricity and fell to the earth.

I.   The hickey, electric light wires, fuse box, and converter were placed on the pole without the defendant's consent, but, as these had remained thereon more than a year, it may well be assumed to have been done with its acquiescence.   That they were so placed by another company did not relieve the defendant of its duty to take reasonable precautions for the safety of its employés. Though the lineman is of necessity exposed to unusual dangers, it is the duty of the employer to see that the place where he is to perform his work is, in view of the situation, reasonably safe; that is, shielded from such perils as an ordinarily prudent and skillful man would, under like circumstances, guard against, and it is no excuse to say that an act in violation of this duty was that of another, if with the employer's consent or acquiescence.   In other words, the obligation to provide the employé a reasonably safe place to work is an affirmative and continuing duty on the part of the

1. ELECTRICITY: negligence.

employer.   If the defendant chose to allow the electric light
company to use its poles, it became its duty to see that these
were not so used as to expose the telephone company's em-
ployés to perils the risk of which was not assumed in enter-
ing such hazardous employment.   See *McGuire v. Bell Tel.
Co.*, 167 N. Y. 208 (60 N. E. Rep. 433, 52 L. R. A. 437);.
*Cherokee, etc., Coal Co. v. Britton*, 3 Kan. App. 292 (45
Pac. Rep. 100); *Trainor v. R. R. Co.*, 137 Pa. 145 (20 Atl.
Rep. 632).

Counsel have stated in eloquent terms the advantages
of electricity.   The power supplied by it and manifested in
different, ways is now in common use.   Its economic ad-
vantages are immeasurable.   Its possibilities
are inconceivable.   But unless properly han-

2. SAME.

dled it is also exceedingly dangerous, and those utilizing the
agency cannot complain if a degree of care and skill in the
construction and maintenance of necessary apparatus and
machinery is exacted commensurate with the dangers in-
volved.   *McAdam v. Cen. R. & E. Co.*, 67 Conn. 445 (35
Atl. Rep. 341).   See *Overall v. Louisville E. & L. Co.*, 20
Ky. 759 (47 S. W. Rep. 442).   Such is the rule with respect
to other instrumentalities, and no reason can be suggested
justifying an exception in favor of electricity.

The wire coil connecting the fuse box with the con-
verter could easily have been so hung as not to have come
in contact with the iron brace, and so adjusting it that the
insulation would be likely " by raking " against
the brace to wear off might well have been

3. NEGLIGENCE:
   evidence.

found to have been improper construction.   It
was as though an uninsulated wire had been left in direct
contact with the brace.   Of course the covering might have
been expected to wear off, but when wires are so placed that
this may occur at short intervals, because of coming in con-
tact with other material, and where loss of insulation renders
them dangerous, inspection should be made with such fre-

quency as appears reasonably necessary to discover and remedy defects, to the end that injury may not result therefrom. The lineman necessarily ascended on the opposite side of this pole, and when in that position his view of the wire was obstructed by the location of the fuse box, converter, crossbar, and brace, and he would not be likely to search for a wire on the other side, not fastened to, but swinging against, the brace, especially if ignorant of the mechanism of the fuse box and converter. The defendant must be presumed to have known what every one else has observed, that linemen in going up and down poles take hold of the braces and other projections which do not appear to be dangerous, and in placing or permitting others to place wires and apparatus on these poles should have taken this custom into consideration in guarding against exposing its employés to unnecessary peril; and whether it did, in view of all the circumstances, exercise ordinary care and skill in so doing, was for the jury to decide.

II. That plaintiff assumed the risks incident to his employment no one questions. Had he been an inspector, or had the inspection of the poles and wires been a part of his duties, there would be much force in appellant's contention that he should be held to have known what it was his duty to ascertain. See *Anderson v. The Inland Telephone & Tel. Co.,* 19 Wash. 575 (53 Pac. Rep. 657, 41 L. R. A. 410); *Chisholm v. The New Eng. T. & T. Co.,* 176 Mass. 125 (57 N. E. Rep. 383); *Bergin v. New Eng. Tel. Co.,* 70 Conn. 54 (38 Atl. Rep. 888, 39 L. R. A. 195); *New Omaha T. H. E. L. Co. v. Rombold* (Neb.) 97 N. W. Rep. 1030. But he was not an inspector, and the record is void of any evidence upon which it could have been found that inspection was a part of his duty. True, he was required to report any defects he might observe, but he was not directed to look for them; was not furnished with any apparatus to test live wires; did not

4. ASSUMPTION OF RISK.

know how, and was even ignorant of the method of testing by touching with the end of his fingers. Indeed the testimoney tended to show that this was the only telephone pole in the city with a converter and fuse box attached to it, and that, though plaintiff appreciated the danger of coming in contact with electric wires, he had had no experience in protecting himself from them. Doubtless he did assume the risk of coming in contact with any wire which in the exercise of ordinary diligence he should have observed. But he was without knowledge of the mechanism of the converter and fuse box, and, as the connecting wire was concealed from view, cannot be held to have been negligent, as a matter of law, in not discovering it. If not charged with knowledge of the danger, it seems unnecessary to say that he cannot be held to have assumed the risk.

III. What has been said practically disposes of the contention that plaintiff was conclusively shown to have been guilty of contributory negligence. The additional element is the fact that he carried an insulating tape with which he might have wound the joint made by the lead-off wire with the common return. Had he done this he would not have been injured. Had he taken hold of the brace on the other side he would have escaped. He could have steadied himself by placing his arm about the pole. One of the pegs might have proven a safe hand-hold. Had he foreseen the danger of seizing the brace, another expedient would doubtless have been adopted. But he did not, and the other things he might have done are important only in determining whether he was guilty of any negligence in taking the course he adopted. Would a prudent man with one hand on the bracket, connected by a wire with the earth, situated as plaintiff was, have grasped the iron brace? He had been working with the return wire, which appeared to be safe, and as there was ground for concluding that he had no reason

5. CONTRIBUTORY NEGLIGENCE: evidence.

to suspect that the brace was in contact with a live wire, the question of his negligence was an open one for the determination of the jury.

The rulings on the admissibility of evidence were correct, and the instructions refused, in so far as correct, were included in those given, which, when considered together, are not subject to the exceptions urged.— *Affirmed.*