THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY AND THE PATAPSCO ELECTRIC AND MANUFACTURING COMPANY

*vs.*

STATE OF MARYLAND, Use of Elizabeth J. Carey, Widow, and Helen M. Carey, Infant Child, of Thomas J. Carey.

*Electric light companies*: *negligence; improper construction; injury to linemen.* *Contributory negligence*: *question for jury.* *Appeals*: *harmless errors; no reversals.*

In general, questions of contributory negligence are for the jury, to be determined by them from all the circumstances of the case, unless the acts relied on to establish such negligence are distinct, prominent and decisive and of a kind as to which ordinary minds would not differ in calling them negligent.

p. 537

The rulings of the trial Court upon matters of evidence, etc., even though erroneous, are not grounds for reversal, unless it appears that the appellant was injured thereby.          p. 538

*Decided January 12th, 1915.*

Appeal from the Superior Court of Baltimore City. (Bond, J.)

The facts are stated in the opinion of the Court.

The following are the granted prayers of the plaintiff and of the defendants, which are inserted by the direction of the Court:

*Pltff.'s 2d Prayer*—If Thomas J. Carey was employed by the defendant, the Chesapeake & Potomac Telephone Company to work on its pole located in the alley in the rear of 130 Augusta Avenue in the City of Baltimore, and if said C. & P. T. Co. granted to the Patapsco Electric & Manufacturing Co. the use of its said pole, or permitted said use, then it was the duty of said defendant the said C. & P. T. Co. to use reasonable care that the wires and transformers of said Patapsco & Elec. Mfg. Co. on said pole, were kept, so far as practicable, in a safe condition at such places as said Carey was expressly or impliedly licensed to be or go in performing his duty in reference to the wires attached to the pole of said C. & P. Telephone Company. (Refused.)

*Pltff.'s 3d Prayer*—That if the jury shall find from the evidence in the case that on or about the 13th of May, 1912, Thomas J. Carey, the husband of the equitable plaintiff, Elizabeth J. Carey, and father of the equitable plaintiff, Helen Marie Carey, was injured, burnt and killed by coming in contact with an iron brace in electrical contact with a transformer situated on the pole as testified to, and while said pole was being occupied and used by said defendants, and that the said injury and death resulted directly from want of ordinary care and prudence on the part of the defendants or their agents, in respect to said construction, and not from want of ordinary care and prudence on the part of said Thomas J. Carey directly contributing to the injury, then the plaintiff is entitled to recover and the verdict must be for the plaintiff. (Granted.)

*Pltff.'s 5th Prayer*—That if the jury should find a verdict for the plaintiffs, they may, in estimating the damages to be allowed, consider what was the pecuniary loss which the

said Elizabeth J. Carey, wife, has sustained by reason of
the negligent killing of her husband, and may consider the
reasonable possibilities of the continuance of the joint lives
of said Thomas J. Carey and Elizabeth J. Carey but for
the negligent killing of her husband, and may allow her such
damages as in their judgment will compensate her for such
pecuniary loss she has sustained by reason of said killing of
her husband, and in estimating the damages which the said
minor child, Helen Marie Carey, has sustained and will
sustain, they may consider what pecuniary loss she has sus-
tained by reason of the negligent killing of her father,
Thomas J. Carey, the prospective damages to be estimated
up to the majority of the said Helen Marie Carey, and that
the jury shall by their verdict find and direct what shall be
the share of the said wife and what shall be the share of the
said minor child of the amount of their verdict.   (Granted.)

The defendants offered the following prayers:

*Defts.' 3d Prayer*—The defendants pray the Court to in-
struct the jury that as it appears from the uncontradicted
evidence in this case that the deceased, Thomas J. Carey,
came to his death by the failure on his part to use due and
ordinary care while descending the pole mentioned in the
evidence, the verdict of the jury must be for the defendants.
(Refused.)

*Defts.' 8th Prayer*—The defendants pray the Court to
instruct the jury that if they find from the evidence that
Thomas J. Carey, deceased, was a telephone lineman of
thirty (30) years' experience, or thereabouts, in such a line
of work, and had been working upon poles carrying high-
tension electric light wires, and that he was familiar with
the ordinary dangers attending work in close proximity with
suhc high-tension electric light wires, and if they further find
that just prior to the accident mentioned in the evidence that
Thomas J. Carey had been working upon the pole mentioned

in the evidence in the line of his duties as a telephone lineman, and was at the time seated upon the telephone messenger attached to the said pole and that the said messenger upon which he was so seated was known or ought to have been known by the said Thomas J. Carey to be a good conductor of electricity, and if the jury further finds that the telephone brace mentioned in the evidence was in contact with the transformer upon one of the cross-arms upon said pole and that the contact of said brace with said transformer was plainly visible to said Thomas J. Carey, and if the jury further finds that the said transformer was liable, from many causes, to become defective and to charge the bars of the said transformer and any brace in contact therewith, and if they further find that the said Thomas J. Carey knew or ought to have known that the said brace was liable to be charged by electricity in case the said transformer should be out of condition, and if the jury further finds that the said Thomas J. Carey in taking hold of or grasping the said iron brace, as mentioned in the evidence, failed to exercise such due and ordinary care for his own safety as any reasonable, prudent lineman would have exercised under all the circumstances, then the said Thomas J. Carey was guilty of contributory negligence, barring recovery of the equitable plaintiffs in this case, and the verdict of the jury must be for the defendants even though the jury may further find that the defendants were guilty of negligence in placing or permitting to be placed the said transformer upon the said pole mentioned in evidence, and in attaching the said iron brace in contact therewith. (Granted.)

*Defts.' 9th Prayer*—The defendants pray the Court to instruct the jury that they are limited in their recovery of damages, if any, in this case to the pecuniary loss sustained by the equitable plaintiffs by reason of the death of Thomas J. Carey, for which this suit is brought, and that the jury cannot allow anything for any pain or suffering which the deceased, Thomas J. Carey, may have endured at the time

and after the accident, nor for the grief and mental anguish of his wife and infant child occasioned thereby.

And the jury are further instructed that in calculating any damages to the infant equitable plaintiff in this case, they can not consider the possibility of the said infant plaintiff receiving any contributions towards her support after arriving at the age of twenty-one years. (Granted.)

*Defts.' 10th Prayer*—The defendants pray the Court to instruct the jury that in estimating the damages in this case, they can not allow anything for the pain and suffering, if any, which the deceased, Thomas J. Carey, may have endured at the time or after the accident, nor from the grief and mental anguish that his wife and infant child, the equitable plaintiffs in this case, occasioned by his death. (Granted.)

*Defts.' 11th Prayer*—If the jury find from the evidence that the deceased, Thomas J. Carey, by any failure to use due and ordinary care on his part directly contributed to the happening of the accident which caused his death, then their verdict must be for the defendants, notwithstanding that they may find that the defendants were equally or even to a greater extent guilty of a failure to use due and ordinary care, and no matter how gross or culpable such failure on the part of the defendants may have been. (Granted.)

*Defts.' 13th Prayer*—The jury are instructed that if they find from the evidence that a lineman exercising due and ordinary care for his own safety would not have touched the iron brace in contact with the transformer upon the pole mentioned in the evidence while sitting upon the telephone messenger supporting the cable described in the testimony in this case, then the verdict of the jury must be for the defendants, notwithstanding the fact that they may further find that the defendants were equally or even to a greater extent guilty of a failure to use due and ordinary care, and no matter how gross or culpable such failure on the part of the defendants may have been. (Granted.)

*Defts.' 14th Prayer*—The jury are instructed that if they find from the evidence that a lineman exercising due and ordinary care under all the circumstances of the case would have used rubber gloves while doing such work as the deceased, Thomas J. Carey, was engaged in at the time of the accident from which he met his death, and would not have taken hold of the iron brace mentioned in the evidence with a bare hand, then the said Thomas J. Carey was guilty of contributory negligence barring recovery by the equitable plaintiffs in this case; and the jury are further instructed that testimony of witnesses in this case, to the effect that linemen working upon telephone wires would not ordinarily use rubber gloves while working upon telephone wires, does not in itself establish a standard of due and ordinary care upon the part of Thomas J. Carey, deceased, but if the jury find from the evidence that under all the circumstances of the case a man exercising due and ordinary care would, before touching the iron brace mentioned in the evidence, and from which the said Thomas J. Carey received an electric shock, had put on a rubber glove or gloves, then such failure on the part of the said Thomas J. Carey to use his rubber glove or gloves was contributory negligence barring recovery by the equitable plaintiffs in this case, no matter how universally other linemen may have failed to use such a precaution. (Granted.)

*Defts.' 15th Prayer*—The jury are instructed that in determining the question as to whether or not the deceased, Thomas J. Carey, met his death by any contribuory negligence on his part, they are not bound to accept the conduct of other men under similar circumstances as establishing what is due and ordinary care under such circumstances, for if the jury find from the evidence that the danger attending work such as that being done by Thomas J. Carey at the place upon the pole mentioned in the evidence would have led a reasonably prudent man to have used rubber gloves at that time, then their verdict must be for the defendants, not-

withstanding the fact that all other linemen had theretofore failed to use rubber gloves under such circumstances. (Granted.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Wm. L. Marbury* and *George Winship Taylor* (with whom was *William L. Rawls,* on the brief), for the appellants.

*Alfred Jenkins Shriver, for the appellee.*

BRISCOE, J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore City by the plaintiff, for the use of the widow and the infant child of Thomas J. Carey against the defendants, bodies corporate, to recover damages for his death caused by the alleged negligence of the defendants, while he was in their employment, as a telephone lineman. The plaintiff recovered a judgment of ten thousand dollars against both companies and the defendants have appealed.

The principal questions arising on the appeal are, whether the accident was caused by such negligence of the defendant corporations, as entitles the plaintiff to recover or whether there was such contributory negligence on the part of the deceased as to preclude a recovery.

These questions are directly presented for our consideration by the rulings of the Court, on the granted and rejected prayers set out in the record and in overruling the defendants special exception to the plaintiff's third prayer, which special exception was as follows: that there is no legally sufficient evidence to show that the death of Thomas J. Carey was due to any negligence on the part of these defendants.

There were three exceptions reserved in the course of the trial upon the admissibility of testimony and are presented

by three bills of exception taken by the defendants. The
fourth exception presents the rulings of the Court upon the
prayers. The plaintiff's third and fifth prayers were granted
and the first, second, fourth and sixth were rejected. The
defendants' eight, ninth, tenth, eleventh, thirteenth, four-
teenth and fifteenth prayers were granted and the others were
refused.

The declaration in substance avers, that at the time of the
accident on the 13th of May, 1912, the defendants jointly
maintained, used and occupied for the purpose of the support
of their wires and cables and a converter box and necessary
mechanisms belonging thereto, a certain pole located in an
alley in the rear at No. 130 Augusta avenue, in the City of
Baltimore. That it was the duty of the defendants so to at-
tach, insulate and maintain the wires and converter box so
that the same should not be dangerous to life, but that they,
in violation of their duty to the equitable plaintiffs' decedent,
attached and maintained on the pole a defectively insulated
converter box in so negligent and careless a manner that the
defectively insulated converter box was in contact with an
iron brace, which said brace supported a cross-arm of the
pole, thereby causing the iron brace to be charged with an
electric current dangerous to life. That while in the em-
ploy of the Telephone Company as a lineman, under the di-
rection of the foreman of the company he ascended the pole
for the purpose of changing wires belonging to that company,
and while rightfully in position to do the work, and while
using due care and caution, he came into contact with the
iron brace, which, by the negligence and want of care of the
defendants had become charged with an electric current dan-
gerous to life, and received a charge of electricity from
which he instantly or shortly thereafter died. That his
death was occasioned by the negligence and default of the
defendants in permitting the converter box to become and
remain dangerous to the lives of workman lawfully using
the pole, by reason of which default, wrongful act and negli-

gence upon the part of the defendants these equitable plain-tiffs, Elizabeth J. Carey and Helen Marie Carey, infant, have lost the services, society and companionship of their hus-band and father and sustained great injury and damages.

The pole upon which the wires were attached was owned and maintained by the telephone company, but was also oc-cupied and used by the defendant, the Electric Light Com-pany, for the purpose of its electric light wires.

At the time of the accident the deceased was employed by the Telephone Company as a lineman and was directed to go with the Loop foreman, to work on the pole, and to make certain changes on a subscriber's line. He ascended the pole, to trace out what is called a bridle wire, as far as the knee-bracket between the two cross-arms on the east side of the cable pole, that carried the service wires to supply the sub-scriber's telephone. While engaged in this work at this point, he was seated on the iron messenger on the south side of the pole near the brace connected with the transformer. After completing this work, he was told by the foreman Boylan to "Take a peep and go down." Carey reached up his hand to get hold of the brace to lift himself off the cable where he was sitting to help himself up, and as he did, as he touched this, he made a sound. Boylan seeing him in trouble, reached to grab him and in doing so, his shoulder went against the cable, and they were both knocked to the ground. Carey was killed, and Boylan broke his leg.

The evidence on the part of the plaintiff tended to prove that there was negligence in both the construction and main-tenance of the pole.

The witness Russell, superintendent of inspectors for the Public Service Commission of the State, who visited the place of the accident shortly after its occurrence, testified: The construction on that pole, in the first place, the pole was too low for the amount of work that was on it. There was not room enough on the pole to carry the wires and trans-former owing to its shortness, which was about a 25-foot

pole, and two electric light cross-arms on it, besides the tele-
phone wires running underneath, and to have given them
proper clearance the pole ought to have been at least five feet
higher; the construction on that pole was not of the standard
character, for what reason I do not know; whoever did the
construction work were dilatory or careless in doing it.

He further testified, that the defective construction was
the direct cause of the iron brace being charged.

The witness Kingsbury, the Chief Electric Inspector of
the City of Baltimore, testified that the electrical construc-
tion on the pole owned by the Telephone Company which was
used as to the upper part of it by the Electric Company, was
not a proper or safe one, and if it had been called to his
attention, he would have taken some action as to the matter.
He further stated, the transformer is dangerous; there is
possibility of the case being charged or the transformer coils
being punctured, or there are many ways by which the iron
box that surrounds the coils can become charged from the
coils; a transformer, if put on a pole should be placed as far
from the pole as is possible to put it, and the iron braces
should by all means be kept away from any of the metal
parts of the transformer.

The grounds of defense in the case are, that the deceased
was guilty of contributory negligence, precluding a recovery
because, first, he grasped the iron brace from which he re-
ceived the shock which caused his death, with his naked hand,
while the contact of the iron brace with the transformer was
plainly, obviously and palpably visible to him at the point
where he was then sitting, knowledge of the danger of such
contact being clearly chargeable to him under the evidence
in this case; and second, he grasped the brace with his naked
hand when, under the evidence, he should at the time have
been using rubber gloves which his employer, the Chesapeake
& Potomac Telephone Company, had provided him with.

The questions of contributory negligence, under the facts
of the case, we think, were left to the jury, by the instruc-

tions of the Court in as favorable a light, as could have been asked by the defendants.

In *Roth* v. *Highways Commission,* 115 Md. 469, it is said: "It is well settled that it is generally for the jury to determine from all the circumstances of the particular case, unless the act relied on to establish it is distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent, and when the nature of the act relied on to show contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to characterize it." *Heinz* v. *B. & O. R. R. Co.,* 113 Md. 582; *Cooke* v. *Balto. Traction Co.,* 80 Md. 551; *Strauss* v. *U. Rwy. Co.,* 101 Md. 499; *New Theatre Co.* v. *Hartlove,* 123 Md. 86.

In our opinion, this case was properly submitted to the jury and falls within the rules established by a long line of decisions of this and other Courts cited herein. *U. Rwy.* v. *Dean,* 117 Md. 686; *Baker* v. *Md. Coal Co.,* 84 Md. 19; *Pikesville R. R. Co.* v. *Russell,* 88 Md. 563; *Barto* v. *Iowa Tel. Co.,* 126 Iowa, 241; *Electric Co.* v. *Rose,* 214 Ill. 545; *Brown* v. *Edison Co.,* 90 Md. 406; *Ziehm* v. *Electric Co.,* 104 Md. 60; *Con. Gas Co.* v. *Smith,* 109 Md. 194; *Dettering* v. *Levy,* 114 Md. 275; *Bartlett Co.* v. *State,* 120 Md. 6; *B. & O. R. R.* v. *Baugh,* 149 U. S. 368.

The plaintiffs' fourth and fifth granted prayers were in proper form, and have frequently been approved in this class of cases.

The defendants' rejected prayers and the special exception to the plaintiffs' third prayer were practically demurrers to the evidence and from what we have said, were properly refused. The law of the case, on the questions of negligence and contributory negligence, was fully submitted to the jury by the appellants' seven granted prayers, and the appellees' third prayer. The Court reporter will set out the plaintiffs' and defendants' granted prayers, in the report of the case.

The three exceptions to the rulings on the evidence present the identical question and can be considered as one. The same question was asked different witnesses and was allowed, over the objection of the defendants. The question was this: Q. "In ascending a pole is it customary and usual, unless some particular danger has been previously pointed out, to wear rubber gloves?"

The same question, it will be seen had previously been asked and answered by the witness Boylan, the Loop foreman, employed by the Telephone Company, without objection.

In *Con. Gas Co.* v. *Smith,* 109 Md. 202, a somewhat similar question was asked, and it was held not to be error. We there said, it can scarcely be doubted that if it had been asked whether it was customary or general with ordinarily careful and prudent linemen to use rubber gloves in doing such work, that the question would have been a proper one. As framed however, the question had in fact a wider scope, and afforded a better test of due care to the jury, referring as it did to the general custom of all men engaged in that character of work.

But assuming there was error, in the rulings on these questions, it does not appear that the defendants were injured thereby and therefore, we would not reverse for its admission, on these objections. There must be injury as well as error to authorize a reversal. *Pratt* v. *Johnson,* 6 Md. 397; *United Rwy.* v. *Dean,* 117 Md. 702; *Dettering* v. *Levy,* 114 Md. 279; *Doggett* v. *Tatham,* 116 Md. 152; *Swindell* v. *Gilbert,* 100 Md. 399.

Finding no reversible error in the rulings of the Court, presented by the record, the judgment will be affirmed.

*Judgment affirmed, with costs.*