# THOMAS T. BOSWELL

*vs.*

# EUGENE L. NORTON.

*Evidence : res inter alios; erroneous rulings; when no ground for reversal. Stock : subscriptions to—.*

For rulings of the trial court upon the admissibility of evidence to justify reversal on appeal, there must appear to have been error on the part of the court, and injury caused thereby to the appellant.                               p. 14

Upon a question of whether the president of a corporation had personally and individually subscribed for certain shares of stock in another company, the ledger of the former company, showing the account of the vendor of the stock with that company, is *res inter alios acta.*                      p. 14

*Decided January 13th, 1915.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Royall Tippett,* for the appellant.

*J. Craig McLanahan* (with whom was *Jacob France* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Mr. Eugene L. Norton at the time of the happening of the events out of which this case arises was the president of the Munsey Trust Co. Mr. Thomas T. Boswell was interested in pushing the business of the Pocohontas Coal Mining Company, and he believed that it would conduce to the advancement of that company to have Mr. Norton's name appear in the list of the directors, and accordingly transferred to him a share of the stock in order that he might be qualified for election upon the board. Mr. Boswell was further anxious to secure a more direct or larger interest upon Mr. Norton's part in the coal mining business, and, therefore, discussed with him a number of times the sale to Mr. Norton of an additional amount of stock in the company. The recollection of these two people as to just the nature of the agreement, if any, which was ultimately arrived at, differs materially. Mr. Boswell's belief apparently was that Mr. Norton agreed to take twenty shares of the stock at 50, including the one share previously given him, and that this was a sale of a portion of the stock then owned by Mr. Boswell. Mr. Norton, on the other hand, seems to have been uncertain with regard to the investment and disposed to delay until some future time the final determination of whether he would or would not purchase stock in the company. Be that as it may, one fact is beyond dispute, that two additional certificates of stock, one for nine shares and one for ten shares of the capital stock of the company were made out and signed by the president and secretary and treasurer, and delivered to Mr. Norton, certifying that he was the owner of them, though none of the three certificates bore any date. This stock, Mr. Norton testified, he supposed to be from the treasury stock of the company, and not that of Mr. Boswell, individually.

The account which was made out by Mr. Boswell against Mr. Norton names December 12th, 1913, as the date of alleged purchase, though Mr. Boswell in his testimony fixes the month of November as the time when he gave Mr. Norton

the one share to qualify him for the directorate. By the account Mr. Norton is made Mr. Boswell's debtor in the sum of $1,000 for the twenty shares, and there are credited against this two amounts of $250 and $150, respectively, as cash payments on account of the purchase, and the suit is brought to recover the remaining $600.

Mr. Norton's theory is that the $400 were not intended as in any sense payments on account of the purchase of the stock, but that as he had possession of twenty shares of the stock individually, in his capacity as president of the Munsey Trust Company, he gave his assent that Mr. Boswell might check against and overdraw his account with the Trust Company to the extent of the aggregate of these two items. An issue of fact, almost of veracity, was thus raised between the parties to the cause.

After the plaintiff and defendant on the witness stand had given their versions of the business dealings between them, the defendant, for the purpose of substantiating his side of the case, produced the statement clerk of the Munsey Trust Company, who produced a leaf, taken from the Loose Leaf Ledger of that company, showing the account of Thomas T. Boswell with the company. This was objected to, but admitted by the Court, and this admission is the sole matter now presented for determination.

This account was offered and intended, doubtless, as original and substantive evidence of the fact indicated by the entries, which had in a general way been testified to by Mr. Norton. There had been no examination of the witness producing the account, with regard to the issue involved in the case, in which allusion had been made to the ledger account between Boswell and the Trust Company, so as to make evidence of this character admissible under the doctrine laid down in 40 *Cyc.* 2529, relied on by the appellant. There is no question in the present case that the stock negotiations were between Mr. Boswell and Mr. Norton in his capacity as president of the Trust Company. It was an attempted

sale of stock by Mr. Boswell to Mr. Norton, as an individual, and such being the case, the ledger or the entries in it were inadmissible to affect the rights of the appellant. They were made out of his presence, and without his knowledge or assent. They were *res inter alios acta* and not binding upon him. *Atlantic Ins. Co.* v. *Carlin,* 58 Md. 341; *Owings* v. *Low,* 5 G. & J. 135; *Lewis* v. *Kramer,* 3 Md. 265; *Hoogewerff* v. *Flack,* 101 Md. 382.

It remains to consider whether the evidence thus erroneously admitted must be regarded as operating to the injury of the plaintiff, because to justify a reversal on appeal there should be a concurrence of error on the part of the Court below and of injury thereby resulting to the appellant. *Leffler* v. *Allard,* 18 Md. 545; *Wallis* v. *Wilkinson,* 73 Md. 128; *Cecil Paper Co.* v. *Nesbitt,* 117 Md. 59; *C. & P. Tel. Co.* v. *Carey,* 124 Md. 527. The main issue presented to the Court by the pleadings and evidence was, whether there had or had not been a sale of stock by Mr. Boswell to Mr. Norton, which remained in part unpaid for; and subsidiary to this, though necessarily involved in it, was the question whether there had been a loan by Mr. Norton to Mr. Boswell of money or credit, as security for the repayment of which he retained possession of certificates of stock which had been made out in his name. There is no claim on the part of the defendant that the account, if admitted, would do anything more than show certain overdrafts by Mr. Boswell in his banking account, and how evidence that he had or had not overdrawn a particular bank account could in any way bear upon or affect beneficially or injuriously the issues of the case, it is impossible to see.

The judgment appealed from will accordingly be affirmed.

*Judgment affirmed, with costs to the appellee.*